# J. R. COOPER v. J. D. FRIERSON.

1. CHANCERY—"AGRICULTURAL LIEN."—Two parties undertake a joint adventure to make a crop, the one to furnish the land and supplies, and the other to furnish and pay the labor, and the profits, if any, to be equally divided. They do not hold themselves out as partners, or give notice of the nature of their association, further than being seen co-operating on the same plantation. Under these circumstances, a merchant, dealing with the party who merely furnished the labor, and expecting to bind the crop under the Agricultural act of 1867, is bound, at his peril, to acquaint himself with the nature of the association.

2. SAME—"ENROLLING" AND "FILING" THE MERCHANT CREDITOR'S CONTRACT.—The mere "enrollment" of the merchant creditor's contract is not sufficient. Nor is it enough to have it enrolled and marked "filed." It must be enrolled according to the formula of the statute, and then the contract must remain on file in the clerk's office, as required. Otherwise the merchant's lien will not be preserved.

APPEAL from the chancery court of Tallahatchie county. SIMMONS, Chancellor.

*Harris & George*, for appellant.

1. The court below must have proceeded on the idea that the agreement between Cooper on the one hand,

and Page & Hubbard on the other, was a mortgage, in which the former was the mortgagee and the latter the mortgagors. This is a mistake. A mortgage is a conveyance by the mortgagor of his property to the mortgagee, to be void on condition of payment of the debt. But here there is no conveyance. In fact, Page & Hubbard had nothing to convey. The agreement is entirely a different thing. It is but a contract to create something—the crop—and to settle the interests of the parties in it after it is made and gathered. Cooper was to be repaid his advances, and no right or title to the crop was to vest in Page & Hubbard until after such payment, and then only to the surplus. It has not a single quality of a mortgage. In one sense, it is a security for the advance, but it is just like the security of a vendor who refuses to part with title or possession until he is paid. The parties agree to create a thing not then *in esse*, each to contribute towards the creation. They also aver as to its ownership after the creation. This agreement makes Cooper owner until certain things are done, *i. e.*, until he shall be re-imbursed for that which he has expended on its creation. Besides, Cooper was in possession, and this was notice of his rights.

2. But complainant had no lien. His lien, if any, grew out of the agricultural lien law. If he claims under that, he must show that he has done that which the law required as a pre-requisite to the lien. This he has failed to do. The statute requires the contract, or a copy, to be filed. There has been no filing here, in any legal sense. The contract was marked "filed" by the clerk, and immediately re-delivered to complainant. This is no filing. "A paper is said to be filed when it is delivered to the proper officer, and by him received to be kept on file;" and "papers put together in order, and tied together, are called a file." Bouvier Law Dic., title " File."

The law, in requiring the contract to be filed, meant more substantial than what was done in this case. It meant that the public should have notice of the terms and nature of the contract—should have an opportunity—whether it was legal and proper. The mere marking the contract "filed," and its retention by the creditor, could perform no useful office whatever; it was utterly nugatory.

*Eskridge & Meriweather*, on same side.

We think the entire crops of cotton were Cooper's, by the terms of his contract with Page & Hubbard, until he was paid for the supplies furnished. The crops were raised upon his plantation; Page & Hubbard were not lessees, but cropping jointly with Cooper. They were, therefore, all the while in the joint possession of Cooper and of Page & Hubbard, held as joint property, with the privilege on the part of Page & Hubbard to become separate owners of the one-half on paying Cooper for the supplies advanced by him. That this was the view of the matter as taken by the parties, is clear from the contract. By the terms of this contract, "that portion of the crops of Page & Hubbard shall remain in the possession of Cooper," etc.; "shall remain in the possession." Now, the possession in Cooper of the crops is recognized and acknowledged; it is regarded as his property, and was to so continue his property, except upon one contingency, and that contingency never happened, and having never happened, the crops became the absolute property of Cooper by fair purchase and delivery. It is like the case of a bailee, to whom the possession of a chattel is delivered as security for an advance of money; it gives to the bailee such a property in the chattel as will entitle him to hold it until his money is returned, and such property right therein as no subsequent sale, mortgage or judgment-lien will destroy without the re-payment of

the money. Now, in the case at bar, Page & Hubbard had only a qualified and contingent property in the half of the crops made by them. Now, it is clear that, under their contract with Cooper, Page & Hubbard had no right to remove or sell the crops, or their half, until Cooper shall have been first paid. This results from Cooper's special property in and the possession of the crops. If we are right in this conclusion, then it is settled law that Page & Hubbard could not part with to Frierson a greater title or interest than they owned. He acquired their title, and no more.

This court, in our opinion, fully sustain these views in the case of Beauchamp v. Comfort, 42 Miss. 94.

Again, we think it clear from the account of Frierson, filed with his bill, and from the proof in the cause, that Frierson cannot be protected and relieved under the act of the 18th of February, 1867, as against the rights of Cooper.

Certainly, it is clear from the proof that there was no necessity, on the part of Page & Hubbard, to go to Frierson or any other person for supplies necessary in the cultivation of their crops, after having made their contract with Cooper. Hubbard, in his deposition, admits that Cooper carried out his contract in full with them to furnish supplies; this fact is also fully established by Cooper. Why, then, go to Frierson for supplies, when all that were needed were being promptly supplied by Cooper? The hands were being supplied by Cooper with all necessary clothing and provisions, and all things else necessary in the cultivation of the crops, and this was known to Frierson, as is shown by the testimony of both Hubbard and Cooper. The account of Cooper, filed with his answer, shows that the great bulk of the articles furnished by him were staple articles, such as the court will judicially know are necessary in the cultivation of crops in this country. The act of the 18th of February,

1867, gives a lien only on such supplies and advances of money, or other things as are "necessary for the cultivation of a farm or plantation." If articles or other things be furnished, not necessary for the cultivation of the plantation, no lien will attach for these articles; and can it be seriously contended that cups and saucers, table and teaspoons, looking glasses, candles, candlesticks, starch, fishing lines, fishing hooks, memorandum books, scissors, tin buckets, tin lamps, coal oil, pocket knives, blacking, paper, combs, pepper, hand scales, padlocks, handkerchiefs, violin strings, powder, shot, steel pens, letter envelopes, tacks, percussion caps, lead pencils, mosquito bars, paper collars, smoking tobacco, matches, finger rings, thimbles, towels, ink, Smith's tonic, lamp wicks, arnica liniment, toilet soap, sad irons, needles, concentrated lye, loaf sugar and cravats, are necessary in the cultivation of a plantation? If they be so, where would the lists top or begin? Now, all the above articles are charged in Frierson's account, and many of them again and again; indeed, about one-fourth of the account is made up of the above articles. Now, can it be that for these articles, Frierson is to be paid out of the crops, when Cooper is to be left out unpaid for the actual necessaries furnished by him? Was the act of 1867 passed to work such gross wrong and injustice? Again, will any articles of Frierson's account come within the letter or spirit of the act of 1867? Was a single article charged in it furnished as necessary to cultivate the crops?

There is another question that we desire to call to the attention of the court. The act of 1867, section three, provides "that all contracts within the provision of this act, or a copy thereof, shall be filed in the office of the clerk, and such clerk shall enroll the same in the order they are so filed." The record in this case shows only by the indorsment of the clerk, that the contract was enrolled in the proper office on the 22d day of November,

1870; nothing appears on the contract showing that it was ever filed, or a copy thereof was ever filed, in the office, and it is admitted by counsel that neither the contract, nor a copy, was ever filed in the circuit clerk's office. Now, we insist that the filing of this contract, or a copy thereof, was a condition precedent to its constituting a lien, and was essential to the creation of a lien upon it.

Frierson's contract was for $500; this was the full extent of it. This contract alone was enrolled in the manner above shown; then it was notice only of the existence of this contract and the amount thereof, and to the extent only of the amount specified and limited in it could it operate as a lien. This is the fullest extent to which the law goes towards giving a lien; yet the chancellor not only decrees that this contract, enrolled for the maximum sum of $500, constitutes a prior lien on the crops of Page & Hubbard, but he also decrees that the further sum of $108, balance due on Frierson's account, constitutes a prior lien on the crops, and decrees its payment out of the cotton. Now, upon what part of the act of 1867, or upon what principle, does the chancellor justify this ruling? Remember, this $108 is in excess of the $500 and interest, and is a balance in excess of that amount due on the account. This account was never filed or enrolled in the circuit clerk's office, and it is only by such filing and enrollment by him that it could become a preference claim.

*Bailey & Boothe,* for the appellee.

It is clear that there was no sale of the crop to Cooper, for the crop was not in existence at the time of their contract with Cooper, and therefore could not have been made the subject of sale. Story on Sales, 187; 1 Pars. on Cont. 522. The sale being void, Cooper did not acquire a vested interest in the crop

of Page & Hubbard, under his contract with them. When a thing not in being at the time cannot be made the subject of sale, it is clear that an interest in such thing cannot be sold. Again, property does not pass unless a sale be completed. 1 Pars. on Cont. 527–528. By the terms of the contract between Cooper and Page & Hubbard, the crop was to be equally divided between the parties. When Frierson's lien attached, and as late as the date of the levy of the writ of sequestration, Page & Hubbard's portion of the cotton had not been put into a condition for sale, or identified, nor had anything been done with it to distinguish it from that of Cooper, nor to determine its quantity. The record shows that Frierson had seized only the cotton of Page & Hubbard, the same being their share of the crop made by them in the year 1870. Cooper's part of the crop has not been disturbed in any way, and it is not shown that Cooper has any interest whatever in the crop of Page & Hubbard, and the debt set up by him, as shown by him, is a claim in favor of Winslow and Cooper, and has not a single semblance of a lien on the crop of Page & Hubbard.

The court, having full jurisdiction of the case to enforce the lien of Frierson to the amount of $500, could do full justice by disposing of the cotton seized to the payment of the balance of the debt due Frierson, if there was any cotton or money left after paying the $500. See Fowler v. McCarthy, 27 Miss. 516; Gilliam v. Chancellor & Murray, 43 ib. 437. And it is insisted that, whether the lien existed or not for the said balance of $108.94, the court below did right in appropriating to Frierson's debt the balance of money, if any, as the same was before the court for its disposition, and Frierson's debt was admitted by defendant, and no one else had any sort of claim to such balance.

We do not admit, as stated by Cooper's counsel, that neither Frierson's contract with Page & Hubbard, nor

a copy of same was ever filed in the circuit clerk's office. We only admit that neither the original nor a copy was left in the clerk's office after the filing and enrollment of same. No question was raised in the court below as to the filing and enrollment, the fact being that Frierson took the contract out after the same was filed and enrolled, and kept it out, and upon filing his bill made it an exhibit. Our admission simply covers this fact.

It was not necessary that the original, or a copy, should have been left in the clerk's office after the filing and enrollment, to insure a lien to Frierson, and the law says a prior lien. The contract, in contemplation of law, was on file all the time after it was once filed, as is any other paper which by law is required to be filed in the clerk's office, after it is once filed.

The contract, or copy presented to the clerk, is to exhibit to him the synopsis for enrollment. The enrollment alone secures to the creditor a prior lien, and the enrollment alone is notice to all parties of the existence of such lien. See Sheet Acts, Miss., 1867, pp. 569, 570. Counsel for Cooper confound filing as a question of fact, with what constitutes filing as a question of law. Frierson's contract was presented to the clerk, enrolled, and then indorsed by the clerk "duly enrolled in contract book 'A,' this November 22, 1870," etc. The contract then became filed in contemplation of law, and we insist filed in fact.

This court, in the case of Howard, Preston & Barrett v. Simmons, 43 Miss. 75, has construed the policy of the law as being liberal toward agricultural liens.

SIMRALL, J.:

The appellant and appellee are contestants for a prior satisfaction of their respective debts against Page & Hubbard, out of cotton, the product of a crop produced in 1870.

The controversy arises upon this state of facts: Cooper, the appellant, having the control of a plantation known as the "Winston place," entered into a contract with Page & Hubbard, to raise a crop thereon, on these terms: Cooper "to furnish the supplies, and afford necessary assistance to Page & Hubbard to make the crops; they to find and pay the labor. The crops when gathered were to be equally divided. Cooper, for all advances made, was to be paid out of the crops, the residue to be divided between them." He was to be re-imbursed for personal supplies. Advances were made by Cooper to the aggregate amount of $2,500, of which $900 was paid, leaving a balance of $1,600 due.

Frierson claims that he has furnished goods to the amount of $608, to Page & Hubbard, and that by virtue of a contract made with them on the 17th day of November, 1870, which has been "enrolled in the office of the circuit clerk," he has acquired an agricultural lien under the statute of 1867. To obtain the fruits of his lien, Frierson brought this suit against Page & Hubbard, in which he asserts his claim for supplies already furnished, and others to be furnished by the terms of his agreement.

Cooper presented a motion to be made a party defendant, which was allowed. In his answer he controverts and denies that Frierson acquired a lien, on several grounds. That the contract with Page and Hubbard was under seal; was signed by Page alone, and has never been ratified by Hubbard; that the supplies, or much the larger part, were sold after the cultivation was over and a considerable part of the cotton gathered; that the major part of the "articles" were not "things necessary for the cultivation of a farm;" that the contract (or a copy) was not left on file in the clerk's office.

Page & Hubbard made no defense, but suffered the

bill to be taken for confessed. Cooper, of the one part, and Page & Hubbard, of the other, went into the joint adventure of producing a crop of cotton, etc., in the year 1870. As between themselves, the agreement plainly states their several obligations and duties, the extent of their respective interests, and the terms upon which the result, if there should be a profit, should be distributed. Page & Hubbard plainly could receive nothing until the contributions towards the crop, made by Cooper, were liquidated. The cotton was the fund to pay, first, Cooper's outlays, and the surplus, if any, to be divided.

In this manner, and upon these terms, the three were jointly interested. They did not adopt a partnership name. They seem to have taken no measures to hold themselves out to the world as agricultural partners, except so far as they may have been seen co-operating on the same plantation. No steps were taken to give notice to the public of their *inter se* contract.

When Frierson, therefore, made negotiations or contracts with either of them, not holding themselves out as general traders or as commercial dealers, simply as jointly interested in making a crop, the range of the business was so limited that it seems to us he was obliged at his peril to inform himself of the terms of their association and the powers communicated to bind themselves jointly. Cooper being on the premises, apparently controlling the farm, would certainly appear as having an interest. The agreement, if it constitutes a partnership, manifestly makes him a member. Yet Frierson treats the firm as composed of Page and Hubbard. He sold the goods on their credit, and exacted the lien from them alone. The theory of the complainant was, that Page and Hubbard were partners; that Cooper is a stranger to the concern, who has put out supplies to them, but whose demand must be postponed to his lien. In the most favorable view that

may be taken of the complainant's demand, he was bound to acquaint himself of the agreement of association between these parties, so as to know the scope of authority to bind each other or pledge the crop.

In some sorts of business, as commercial dealing and general trading, the nature of the business, its necessities, the usual course of conducting it, proclaim to the public that each member is competent to make contracts within its scope and objects; give notes, bills of exchange, etc. Other partnerships are of a more limited character, confined to a single adventure. In such cases, according to the nature of the business, and what is usual and customary, will be the measure of each partner's authority. Davis v. Richardson et al. 45 Miss. 507.

The right asserted in this suit by Frierson is dependent on the acquisition of the lien. Two conditions are imposed upon the creditor: 1st. An enrollment of his contract in the circuit court clerk's office; for, from that date the lien begins. Pamph. Acts 1857, § 1, p. 569. This enrollment must be made according to the formula given in the third section. But the creditor must do more; "he must file the contract, or a copy thereof, in the clerk's office." The enrollment is a brief summary to guide the inquirer to the knowledge of the name of the creditor and debtor, the amount of debt, when due, and when the contract was filed. (Third section.) The contract, or a copy, must be on file, so that it may be open to the examination of all persons interested.

The filing and enrollment complete the lien. The statute is not satisfied, by the indorsement on the contract, that it was filed, if the creditor withdraws it and keeps it. For what purpose make such indorsement, if the paper may be taken away? The term "filing" imports that the paper shall remain with the clerk as a record, subject to be inspected by those who have an

interest in it, and to be certified by him as any other paper properly lodged in his office and committed to his custody.

It is admitted that Frierson's contract was not, in this sense, "filed" in the clerk's office. It follows, then, that he has no lien. This defect goes to the foundation of his suit.

It is unnecessary to consider the other points raised and discussed by counsel.

Decree reversed and cause remanded for further proceedings, in accordance with this opinion.