## W. B. PRINCE *v.* CRAWFORD & GAITHER.

1. PARTNERSHIP — GENERAL AND LIMITED — RESPECTIVE POWERS THERE-
   OF. — The principle applicable to general partnerships is, that all acts
   done by one partner in the course of the business is in legal effect as if
   done by all. Each partner is constituted an agent for all, as to all
   matters within the scope of the business. Restrictions imposed by part-
   nership articles have no operation in transactions with strangers unless
   they have notice of them. In partnerships of a limited character the
   measure of authority imparted to an individual member to bind the
   firm in transactions with third persons is limited by the nature of the
   business.

2. SAME — PLANTING PARTNERSHIPS — LIABILITY TO THIRD PARTIES. — In
   planting partnerships there is not implied power in the several members
   to borrow money, draw bills of exchange, etc., and thereby bind the
   firm. Those who deal with individual members *of such firms* must at
   their peril inform themselves of the articles of association and the power
   communicated to each to bind all. Story on Partn., § 216. The extent
   of the liability of such firm for the acts of its members depends upon the
   nature and scope of the business, and where one member exceeds the
   usual power of such partnerships the party dealing with the member
   must show that he had authority to bind the firm or that the members of
   the firm acquiesced in the act, before the firm would be bound thereby.

3. SAME — ERRONEOUS INSTRUCTIONS. — The second charge for the plaintiffs
   was erroneous, because it might have misled the jury as to the liability
   of the firm for the acts of one of its members. The third instruction for
   plaintiff was obnoxious, because it tended to mislead the jury in that
   they may have construed it as embracing the idea, that if one member of
   the firm was in the habit of drawing drafts in the purchase of supplies,

in the firm name, that established the "usual practice of the firm." For the same reasons the modifications of the first and second charges for defendant are erroneous. The modification of defendant's third charge is objectionable, in that in order that silence or negligence may have the effect of binding the nonparticipating partner, it ought to be shown that he was so situated that he must have known it, or it should be inferred that he did know of the course of business, so that his conduct would mislead and deceive if he were permitted to plead nonacquiescence.

ERROR to the Circuit Court of Washington County. Hon. C. C. SHACKELFORD, Judge.

This was an action of assumpsit brought to recover on a bill of exchange in the following form:

$2,255.79.                       NEW ORLEANS, 11th July, 1870.

On the 10th day of October next, pay to the order of ourselves twenty-two hundred and fifty-five 79-100 dollars, for amount due Crawford & Gaither, value received, and charge to account of PRINCE & MORROW.                       By T. L. MORROW.
To HADDEN, OVERTON & BUNCH, New Orleans, La.

Indorsed Prince & Morrow.

The defendants are declared against as partners under the style of Prince & Morrow. W. B. Prince pleaded that he was not a partner of Morrow as charged in the declaration, and that Morrow had no authority to draw the bill in his name or to sign his name thereto, and swore to the plea. To this plea there was a demurrer filed, which was sustained. Under the judgment *respondeat ouster*, Prince pleaded as follows: 1. That he was not a partner of Morrow's when the bill was drawn. 2. That Morrow had no authority in law or fact to draw the bill in the name of Prince. 3. That the bill was not his act, and was not made by him.

All the pleas are verified by affidavit. The replications allege that Prince was a partner of Morrow when the bill was drawn, and that Morrow did have authority to draw the bill in the name of Prince under the firm style of Prince & Morrow. There was jury verdict and judgment against Prince and in favor of defend-

ant in error.   Morrow having entered his appearance, and failed to plead, there was a separate judgment entered against him by default for the amount of the plaintiff's demand.   There was a motion made by Prince for a new trial, for the following reasons: 1. The verdict of the jury is contrary to the law and evidence. 2. The court erred in the instructions for plaintiff.   3. The court erred in refusing and modifying the instructions asked by the defendant, and for other causes, etc.   This motion was overruled, and a writ of error taken to this court.

The agreement of partnership between Prince & Morrow was as follows:

" The following articles and terms of partnership, this day made and ratified by and between W. Berry Prince and T. L. Morrow, witnesseth as follows: The said parties agree to plant for the term of three years, or so long as it may be agreeable to them, or either of them, upon said Prince's plantation, lying in Washington county, Miss., and known as the ' Lake place.' Should either of said parties become dissatisfied and wish to terminate said partnership at any time before the limit hereabove set forth, the same may be done by the dissatisfied giving six months' notice prior to the first of January of any year.   The said Prince agrees to furnish the land to be cultivated free of any charge for rent, and in consideration thereof the said Morrow agrees to oversee and manage the place free of charge ; and in further consideration of land rent free, the said Morrow agrees, at the mutual expense and charge of himself and said Prince, to place said plantation in a perfect state of repair by thoroughly repairing the dwelling and the cabins and outhouses ; also, to erect a new and substantial stable and corn cribs, and to fence the place.   Further, said Morrow here undertakes to provide the mules meat, corn, farming utensils and materials necessary to the farming and refitting the plantation for and during the year 1869, without calling upon said Prince, and to repay himself for said Prince's half of the same out of Prince's half of the crop to be raised

during the year 1869. It is further agreed and understood that all the expenses incident to the proper management and cultivation of said place (save the expense of an overseer or manager, which, as above stated, said Morrow agrees to pay himself) shall be borne equally by said parties. Said Prince's portion thereof to be paid, as stated, out of his part of the proceeds of the crop. Said Morrow also here agrees and binds himself to leave said place, whenever such partnership terminates, in a perfect state of repair, or to make up to said Prince the deficiency in money. Further, that after the said expenses are paid, the net proceeds of the crop are to be divided equally between said parties.

" In faith whereof we have hereunto set our hands and seals, this 17th day of December, 1868.

" W. BERRY PRINCE, [Seal.]<br>
" T. L. MORROW."   [Seal.]

It was in evidence for plaintiffs below that plaintiff in error was a member of the planting firm of Prince & Morrow ; but all persons who had dealings with the firm had them with Morrow, who resided on the place jointly cultivated. None of them knew or had ever seen Prince; none of them had any personal knowledge of the terms of the partnership, but some of them had seen mules and cotton, on the place on which they planted, branded Prince & Morrow, and had sold mules to Morrow, who, in payment therefor had given a draft on New Orleans signed Prince & Morrow, which draft was paid upon presentation. It was also proven by the seller of the mules, for which the draft in controversy was given, that he would not have sold the mules to Morrow individually, and not at all, had he not known that he and Prince were partners, and that Prince was solvent.

It was proven for defendant below, that he never authorized the drawing of the bill in litigation ; that he never authorized Morrow to sign his name to any paper or note; that he had no notice of the drawing of the draft until the fall of 1870; that as soon as he learned that Morrow was drawing drafts in the firm

name, on New Orleans, he had letters written to his commission merchant to inform the factors upon whom the drafts were being drawn ; that he had left $5,000 of his part of the crop of the previous year to pay his portion of the plantation expense ; and that Morrow must be drawing bills for his private purposes ; that he never had nor could get a settlement of the plantation affairs with Morrow. That he never received anything from the crops while planting with Morrow, and was never on the plantation during the partnership. In June, 1870, he gave Morrow the notice required by the agreement to terminate the partnership. It was also proven for defendant that Morrow admitted that the mules, for which the draft in controversy was given, were not needed in cultivating the plantation, but were bought for speculation.

The instructions given for the plaintiffs below, which were reviewed by this court, are:

2. " If the jury believe from the evidence that the defendants Prince & Morrow were cultivating the plantation of Prince in this county on their joint account as partners in planting, and that Morrow drew the draft in question, signing the same Prince & Morrow, by T. L. Morrow, and that the draft was given for necessaries, and was usual with said firm or others in like business for the proper carrying on of their business as such planting partners, then Prince is bound as well as Morrow on the draft, and the jury will find for the plaintiffs on the two special pleas."

3. " If the jury believe from the evidence that the defendants Prince & Morrow were cultivating the plantation of Prince in this county on their joint account as planting partners, and that Morrow drew the draft in question, signing the same Prince & Morrow, by T. L. Morrow, and that it was the usual practice of the firm for Morrow to draw drafts in the purchase of supplies or necessaries, and the draft sued on was given for supplies or necessaries for the firm in that form, then Prince is liable on the draft, and the jury will find the issue on the two special pleas for the plaintiff."

And those for the defendant with the modification of the court, are:

1. "If the jury believe from the evidence that Prince & Morrow were engaged in planting on joint account upon a plantation belonging to Prince, and that the terms of the agreement were to the effect that Prince would furnish the land free of rent, and that Morrow would furnish the mules, farming utensils, meat, etc., and repay himself out of Prince's half of the crop ; and that Morrow had no authority from Prince to draw the bill of exchange sued on — *modification* [or the same was not given for necessary supplies in carrying on the plantation, and was the usual course pursued by others engaged in like partnerships], the jury will find for defendant."

2. "If the jury believe from the evidence that a planting agreement existed between defendant Prince and Morrow, by which Morrow agreed to furnish the mules to be used on the place, and that Morrow bought the mules by means of the draft sued on, and signed the name of Prince & Morrow to the same, without the authority of Prince, and that the parties who took the draft were not induced to do so by any act or expression of Prince, either of omission or commission, or to believe that the same was so signed by his consent, but depended solely upon the statements and acts of said Morrow, which were unauthorized by Prince, or not acquiesced in by Prince, and if they further believe that such signing by said Morrow was against the wish and express agreement of said Prince — *modification* [and said draft was not drawn for necessary supplies for said plantation and in the usual course of business of the partnership, or of partnerships of like character], they will find for defendant."

3. "The mere existence of a farming agreement or partnership between two parties does not authorize the drawing of bills or notes by either to charge the other. This rule applies to mercantile or commercial partnerships in which such acts grow necessarily out of the business. In planting partnerships or agreements,

persons dealing with the partner separately, do so at their peril, so far as the personal liability of the partners is concerned, and cannot recover as against the partner not directly concerned, unless they can establish by evidence that such partner authorized or consented to the contract with the other — *modification* [either directly or by his silence or negligence, permitted such contracts to be made under the supposition that he was a partner and such contracts were made for necessary supplies and in the usual course of business of the partnership]."

The errors complained of are :

1. The court erred in permitting any further proceedings to be had in the case after judgment was rendered against T. L. Morrow ; the rendition of that judgment being to all intents and purposes a conclusion of the suit and necessarily operating in law as a discontinuance thereof as to said Prince.

2. The court erred in overruling the exceptions taken by plaintiff in error in the court below to the depositions of Crawford and Gaither, Patterson and Chaffe. Said exceptions should have been sustained and the depositions excluded from the jury.

3. The court erred in overruling the motion for a new trial.

4. The court erred in not overruling plaintiff's demurrer to defendant's first plea, and in not extending it back to the declaration or the second count thereof.

5. The court erred in modifying and refusing instructions asked by defendant in the court below.

*W. L. Nugent,* for plaintiff in error :

The principles of law applicable to commercial and general partnership, cannot prevail in this case. The parties were simply engaged in cultivating a plantation under written articles of agreement, defining and limiting the rights, duties and obligations of each, and there was no implied authority in either to draw a bill of exchange for the other, or in the joint names of both. The plaintiff in error was not liable upon the bill drawn by Morrow, unless the money thereby realized was necessary for the busi-

ness and the credit of the planting firm usual, as shown by the practice of the firm or others, in similar business. Prince did not sign the bill sued on, nor did he authorize its signature, and all the statements of the witnesses in connection with what " Prince & Morrow " had done, when sifted, are nothing but what Morrow alone did, without the knowledge or consent of his partner. The defendants in error never had any dealings with Prince, who knew nothing about the drawing of the bill of exchange in suit. They were bound to know the extent of Morrow's authority under the articles of agreement; and they negatived any power to pledge the credit of the firm. Tested by the rules of law applicable and the evidence before the jury, the instructions of the court below were manifestly improper, and certainly misled the jury. Dickinson v. Valpy, 10 Barn. & Cress., 138; Belcher & Davis v. Richardson &. May, MSS. opinion.

*Harris & George,* for plaintiff in error.

The charges given on behalf of the plaintiff are very long and are difficult to be understood. We extract from them, however, the following propositions:

1. That Prince & Morrow, being planting partners, if M. was in possession of the plantation, openly and notoriously conducting it in the name of Prince & Morrow, with the knowledge on the part of Prince that he was so acting, then P. was liable, notwithstanding the terms of the partnership articles.

2. That if the above acts were continued by Morrow for a year, Prince is liable whether he knew of them or not.

3. If the draft sued on was given for necessaries as was usual with the firm of Prince & Morrow, Prince is liable, whether he had knowledge of such usage or habit of Morrow or not.

4. That Prince is liable on the draft if it was given for supplies, and the giving of drafts was usual in like partnerships, or was usual in the firm of P. & M., whether P. knew of such usage of M. or of other firms or not.

5. That although as a planting partner, P. was not bound by the

drafts of M., yet he would be bound if the contract was made for supplies, and Prince either directly or by his silence or negligence, permitted such contract to be made under the supposition that M. was his partner.

Until the decision of this court in Davis v. Richardson, 45 Miss., R., the difference between planting or farming partnerships and commercial partnerships was not correctly understood either by the community at large or the profession. It was conceived that there was some magic in the name of " partner " which rendered one holding that relation to another absolute maker of the fortunes of his associate by endowing him with unlimited power to make all contracts which might by possibility be considered as made for and on behalf of the firm.

This was evidently the idea upon which this plaintiff acted, for they both swear that they gave the credit to Morrow, because they understood P. & M. were partners, and that they saw cotton and mules marked in the name of P. & M. They trusted because they believed P. & M. were partners in planting. This theory of the plaintiff was exploded by the decision in Davis v. Richardson, which denied to planting partners, as a result of that relation, the power to make notes and bills in the firm name. And afterwards in Cooper v. Frierson, Miss. R., the doctrine was still further explained by a ruling that when parties were associated for farming purposes, it was the duty of one treating concerning the firm business with one of the parties interested, to inquire into the real nature of his powers. If this had been done here there would have been no controversy, for the partnership agreement expressly denied to Morrow to bind Prince by the contract sued on.

There being no real power in Morrow to bind Prince, as his planting partner, the attempt is made to hold Prince liable upon several grounds:

1. That Prince held Morrow out to the world as having these powers, and that such holding out consisted of a series of acts of like character committed by Morrow in the partnership name,

whereby the usage of that particular partnership is established, and that Prince is bound by such usage by his silence and negligence in permitting it to grow up.

But the answer to this is plain. As a matter of law, no man can be committed to the holding out of another as his agent, except by his own acts. The acts and declarations of the alleged agent will not do to establish his authority, unless they are brought home to the knowledge of the alleged principal, and thereby become his acts. If this were not so, " he might incur a painful responsibility through the fraud or rashness of others." Collyer on Partners, § 97.

Besides, the theory on which one is held liable by such holding out is, that the public trusted to his acts creating such holding out, and to permit him to deny a responsibility thus indirectly admitted, would be a fraud on those who trusted him. The attempt here is to hold Prince liable, not because the public trusted to his acts and declarations, but to Morrow's. But it is said Prince was guilty of negligence in allowing Morrow so to act as to create the impression that he had the authority claimed for him. The answer is that Prince is not guilty of negligence until he has knowledge that Morrow was so acting. He must have knowledge. He was not bound to inquire into Morrow's conduct until something had been brought to his knowledge to excite inquiry. He lived one hundred miles from the domicil of the partnership; was never on the plantation till the partnership ended. He had a right to suppose that Morrow was acting according to the stipulations of the partnership articles. He was not bound to suspect fraud in Morrow, and was therefore guilty of no negligence.

But there is another complete answer to this pretension. The plaintiffs do not claim to have been influenced by any such " holding out." Whoever else may have been deceived by it, they were not. They trusted alone to the fact that Morrow was a planting partner. It is only those who have been misled by the " holding out" that can complain, if the real truth be shown.

23

See Shott v. Strealfield, Moody & R., 9; Alderson v. Pope, 1 Comp., 404.

2. It is error that he is bound because such was the usage of similar partnerships. But there is no proof of this usage, and besides, such a usage, if proven, must be shown to be known to Prince. The rule is, that a usage is not proveable at all, unless it be so long established, and so universal, that all persons in the locality affected by it must be presumed to know. Partial usages or customs of recent origin, not commonly recognized, can have no effect on the rights of parties. See Schooner Reeside, 2 Sumn., 567; Shackelford v. N. O., J. & G. N. R. R. Co., 37 Miss., 206.

But the charges given, and the modifications made of charges asked for by Prince, were well calculated to mislead the jury. The jury were charged with reference to the usage of other partnerships, and there was no proof on that point. This was error. The court has no right to suggest in a charge, a statement of facts for which there is no evidence. See Dix v. Brown, 41 Miss., 131; Burns v. Kelly, 41 ib., 339; Barker v. Justice, 41 ib., 240; Greenwade v. Mills, 31 ib., 464; Garnett v. Kirkman, 33 ib., 389; McIntyre v. Kline, 30 ib., 367; Heirn v. McCaughan, 32 ib., 17; Clarke v. Edwards, 44 ib., 778.

The modification to the 2d charge asked for by Prince is especially objectionable. It announces the law to be, that Prince is liable, though Morrow had no real authority to make the contract, and was acting against the word and agreement of Prince, and plaintiff trusted alone to Morrow's statements, if the draft was drawn for necessary plantation supplies, and on the usual course of business of said partnership, or of partnerships of like character.

The rule below as thus modified is faulty in its failure to explain what was the meaning of the phrase " usual course of business" of said firm." It presents no definite and clear idea. If it meant the usage and custom of the firm as represented by Morrow, then it is manifestly wrong, as has heretofore been shown. If it

meant that if the transaction took place openly, and if there was nothing in it, either as to terms, manner, space or quantity, which was unusual, then the proposition announced gives a planting partner full power to bind the firm by all purchases, if they be only made in the usual manner.

The modification of the 3d charge is also objectionable; it makes Prince liable, if "he by his silence or negligence permitted such contracts to be made." The proof showed that Prince had not been in one hundred miles of the plantation during the whole time, and Prince had sworn that he knew nothing of Morrow's making contracts in the firm name. The instruction should have explained the circumstances under which silence was culpable, and the rules of law which applied to the question of negligence. The jury might have supposed that it was Prince's duty to watch Morrow, or have an agent to do so, and to discover when he was guilty of a fraud, and then repudiate it publicly. They are left wholly in the dark as to Prince's rights and duties in this respect. The modification introducing these terms should have plainly and explicitly laid down the law and all the exceptions and qualifications, so the jury could have comprehended it. See Payne v. Green, 10 S. & M., 507; Cohea v. Hunt, 2 S. & M., 227; Young v. Power, 41 Miss., 197; Mullins v. Cottrel, 41 ib., 291; Greenwade v. Mills, 31 ib., 464.

*Johnston & Johnston,* for defendants in error:

I. Morrow failed to plead and judgment by default was entered up against him. On the same day the cause was tried by a jury as to Prince the other defendant, and on the same day judgment on the jury verdict was rendered against the latter. There was no error in this proceeding against the defendants. Rappeleye v. Hile, 4 How., 295; Henry v. Halsey, 5 S. & M., 573. Where the cause of action (as in this case), was joint and several, it is not error to render judgment against one defendant on default, and another judgment against other defendants on verdict. Peyton v. Scott, 2 How., 870; Lynch v. Commissioners, 4 ib., 377.

II. There was no error in admitting the testimony objected to by the defendant. But this evidence could not have affected the result. There is abundant evidence in the case to sustain the verdict on the points involved in the objection. A new trial will not he granted for the admission of illegal testimony to establish a fact which is otherwise proved in the cause, or where on the whole case it is apparent that substantial justice has been done. Fore v. Williams, 6 Geo., 533; Hand v. Grant, 5 S. & M., 508; Pritchard v. Myers, 3 S. & M., 42; Mary Wash. College v. McIntosh, 8 Geo., 671. Nor where the illegal evidence was merely cumulative. Routh v. Ag. Bank, 12 S. & M., 161.

III. The instructions considered together announced to the jury correctly the law of the case, and under the instructions as given by the court, the issue of fact as to the defendant's liability was fairly left to the consideration of the jury. The evidence shows that Prince was liable for the debt sued for. A new trial will not be granted for erroneous instructions, if the verdict be right according to the evidence, and in accordance with the justice of the case. 6 Geo., 506; 5 How., 495; 4 C., 282; 40 Miss., 191; 1 Geo., 504; 3 ib., 125; 44 Miss., 466. Without reviewing at length the evidence in the cause, we will briefly state that the defendants were partners engaged in planting operations. Morrow was in the habit of drawing bills for the plantation supplies, etc., and had done this for more than a year. He was the active manager of the business. The bill in this case was given for mules needed for cultivating the plantation of the firm. The mules were actually delivered on the plantation, were branded with the initials of the firm name, worked all the year in making the crop, and at the dissolution of the firm, on a settlement of the partnership they fell to Prince as his share of the firm assets. Although Prince denies that he *authorized* Morrow to sign bills in the firm name, yet from the evidence in the case it is apparent that the usage and course of business of the firm was such as to authorize the belief with all persons dealing with the firm, that Morrow had this power. Cer-

tainly Morrow had the power to *purchase* the mules, and bind the partnership for the price. The evidence leaves no room for doubt on this point. We submit that substantial justice was done in the case, and a different instruction on the point pressed for plaintiff in error would not have changed the result.

IV. The fourth assignment of error is not well taken. The plea is double in this; it denies the partnership, and denies that Morrow had any authority to draw the bill of exchange sued on. The demurrer is based on the ground that the plea is double. In sustaining the demurrer, leave was given the defendant to plead over, whereupon he presented these defenses separately in two pleas. Even if it was technically an error to sustain the demurrer, the defendant has had the full benefit of the two matters of defense.

We submit that the judgment should be affirmed.

SIMRALL, J., delivered the opinion of the court:

The bill of exchange purports to have been drawn by Prince & Morrow, per T. L. Morrow, who are averred in the declaration to have been partners, and were sued in that capacity.

They were jointly interested in the cultivation of a plantation, on the terms set forth in the articles of partnership.

In the cases of Richardson and May *ads.* Davis, 45 Miss. Rep., 506, and Cooper v. Frierson, 48 Miss., 309, the difference between general trading and commercial partnerships, and those of a more limited character, was stated, as respects the authority of a member to make contracts and incur obligations which would bind all the members. As to the former, the principle is, that all acts done by one partner in the course of the business is in legal effect, as if done by all. Each partner is clothed with authority, or constituted an agent for all, as to all matters within the scope of the business. Restrictions imposed by partnership articles have no operation in transactions with strangers, unless they have notice of them.

In associations of a more limited character, the measure of authority imparted to the individual member, to bind the partnership, in transactions with third persons, is limited by the nature of the business.

In a planting partnership, there does not exist the implied power in the several members to borrow money, make promissory notes, draw bills of exchange, and thereby bind the firm.

Those who deal with an individual jointly interested with another in the cultivation and production of agricultural products, must at their peril inform themselves of the articles of association, and the power communicated to each to bind all. Judge Story sums up, from the cases, the rule to be, that express authority must be given for the purpose, or that it is implied by the usages of the business, or the ordinary exigencies and objects thereof. Story Part., § 126.

The rule is founded in manifest wisdom and propriety. One man may be entirely willing to engage with another in the cultivation of a farm, on terms defined by articles, who would not risk his associate beyond that special business. A landlord might well agree to unite with one or several. in the cultivation of his land, on joint account, on specific terms, who would not confide to him or those joined with him, the powers implied by law in a more general partnership.

One who holds himself out as a partner, or suffers it to be done, is often held to that responsibility by a third person. That is upon the principle that the credit was given, or the contract made on the faith of his actually being what he appeared to be, and what by his conduct he published himself to be.

But whether the liability is incurred, or the extent of it, in such circumstances, depends upon the nature and scope of the business. Prince held himself out as a member of this planting partnership. It does not matter whether it continued one, or two years, or more; the public could infer no more than that he invested Morrow with such authority as was germain to the business, which did not in-

clude power to draw joint bills of exchange and promissory notes. Strangers, therefore, proposing to have such negotiations and transactions with Morrow, were put upon inquiry to ascertain whether he had express authority, or they must know that Morrow had been in the habit of so using Prince's name and credit, with Prince's sanction and acquiescence, which would have been of equal effect with an original authorization. Or it must be shown that he had authority to draw the bill from the habit of this firm, or usages of such business. But such usage must be so notorious, common, and public, that it must be presumed that Prince was aware of it.

Let us make an application of these principles, to the facts in evidence to the jury, and the instructions of the court.

The partnership agreement does not authorize Morrow to make contracts of the character sued upon.

Both of the plaintiffs in their depositions state that they had never seen Prince, and had no acquaintance with him. They knew from what they heard and what they saw, the marking and shipping cotton, and branding mules in the name of "Prince and Morrow," that there was a partnership, but not its terms. The The draft was taken in renewal of two other drafts given by Morrow for mules, in the belief that Prince would be bound. In their dealings with Morrow, they had no other information of Morrow's power to make the joint contract, other than such as was disclosed by the above circumstances. From the existence of the partnership and the other circumstances detailed by them, they assumed that Morrow had the right to pledge the joint credit. They did not know, nor did they inquire whether Prince acquiesced in and consented to that mode of doing business.

Prince, in his testimony, emphatically denies that he authorized or assented to such use of his name, and had no knowledge or notice until informed by lettter from Chaffe & Brother, factors in New Orleans, in Feb., 1870, that Morrow had run up a large joint account with them, when he took steps to notify them that it was without authority. He also denied knowledge of the bill of exchange until sued upon it.

On the trial, Prince, to prevent a continuance, admitted that the absent witness would testify that he, Prince, was aware, during the continuance of the partnership, that Morrow was in the habit of drawing bills of exchange, shipping cotton, purchasing supplies, and making contracts and accounts in the joint name; that he had knowledge of the draft and of the purchase of the mules, and that they were necessary; and that upon the division of the joint effects, all or nearly all of the mules were received by him. If these statements were accepted as true, they would warrant the inference, or rather positively show that Prince consented to the use of his name and credit by Morrow, and that he ratified the purchase of the mules and the giving of the draft.

The testimony was conflicting and contradictory on the points of knowledge and acquiescence in the course of the business and subsequent ratification. There are circumstances in testimony derived from other sources than the defendant Prince, conflicting with what this witness would have sworn.

The credibility of testimony is especially intrusted to the jury. In such state of the evidence, the court would be assuming a responsibility unwarranted, to set aside the verdict unless there was a great preponderance of evidence against it, or unless the jury were misdirected by the court.

The charges to the jury are so numerous and voluminous, that it would require perhaps more discrimination than usually belongs to the nonprofessional mind to digest, and apply them to the testimony.

The second instruction for the plaintiff may have had the effect of misleading the jury. The court informed the jury that Prince is liable if the "draft was given for necessaries, and was usual with said firm or others in like business, in carrying on their business," etc. To affirm that a certain line of business is usual with a firm, implies that the several members concur in what is done. The very point controverted by Prince was, that he did not consent. To prove that a certain course of business was

usual, so as to charge a member who did not participate in its management, it must be shown that the active manager so conducted the business that his partner was cognizant of it, or circumstances must be put in evidence from which that inference may be drawn. But further, there was no testimony before the jury as to what was the usage of similar planting partnerships.

The third instruction is obnoxious, to the objection of tending to mislead the jury, because the jury may have construed it as embracing the idea that, if Morrow was in the habit of drawing drafts in the purchase of supplies and necessaries in the firm name, that established " the usual practice of the firm," although Prince may have known nothing about it. It was proved that Prince had not been in Washington county where the planting operations were conducted, from its beginning until long after the partnership closed. There was testimony — whether creditable or not was for the jury to determine — that he was ignorant of what Morrow was doing. In this condition of the testimony, it was eminently proper to have qualified the instruction as we have suggested.

The same objection lies to the modifications of the 1st, 2d and 3d instructions asked by the defendant. It may be observed, as respects the modifications of the 3d charge, that in order that silence or negligence may have the effect of binding the nonparticipating partner, it ought to be shown that he was so situated, as that he must have known, or it should be inferred that he did know of the course of business, so that his conduct would mislead and deceive, if he were permitted to plead ignorance and nonacquiescence.

It seems, therefore, that on the vital question in controversy, the jury may have been misled to the prejudice of the defendant.

Judgment reversed and a *venire facias* awarded.