JOHN M. MORGAN ET AL. *v.* JACOB H. PIERCE.

1. PLANTING PARTNERSHIP.　*Power of partners.　Application of crop.*
　　Where, in order to make a crop, a farm manager puts his skill against
　　a capitalist's land, and to obtain live stock and supplies they execute
　　their notes secured by a trust deed on the land, stock, and crop, the
　　former has no authority to apply the crop to an additional supply
　　bill, so as to preserve the security.

2. SAME.　*Deed of trust.　Appropriation of payments.*
　　From the trust deed in such case the *cestui que trust* has notice of the
　　extent to which the land-owner will incumber his property, and
　　before he makes further advances must ascertain whether the man-
　　ager has special authority to exceed the limit and to divert the crop
　　to the payment of the unsecured debt.

APPEAL from the Chancery Court of Lowndes County.

Hon. F. A. CRITZ, Chancellor.

The appellee and F. M. Snook, a farm manager, who were engaged in planting jointly on land of the former, purchased, on Jan. 12, 1876, two mules, for two hundred and twenty dollars, from John M. Morgan & Son, who agreed to furnish them five hundred dollars in supplies during the year. In order to secure their two joint and several notes given for the mules and supplies, Snook and the appellee, on the same day, exe-cuted a deed of trust upon the land, the mules, and the crop to be grown that year. Early in July the note was exhausted, and Snook obtained additional supplies to the amount of seven hundred dollars. Fourteen bales of cotton were grown, and de-livered to Morgan & Son, who sold them for six hundred and sixty-four dollars, which at Snook's direction they applied chiefly to the debt for additional advances. When informed of this, the appellee declared that he never before heard of the additional supplies, that Snook had no authority either to purchase them or to use the cotton in payment, and, tendering Morgan & Son fifty-six dollars, claimed that the cotton should be credited on the trust debt, which by this means was paid. Subsequently, however, the trustee sold the property, and Morgan & Son purchased, received a deed on Feb. 20, 1877, and at once took possession. Upon Feb. 17, 1880, the appellee filed this bill

to set aside the sale, and compel Morgan & Son to account for the personal property and the rents of the real estate, and, notwithstanding the answers of Snook and the other defendants, the Chancellor decreed, at the final hearing, that the trust deed be marked satisfied, the deed by the trustee cancelled, and that the appellee should recover a certain sum for his rents and personal property.

*Humphries & Sykes*, for the appellants.

Except in limited or special partnerships, partners are liable to the full extent of partnership and separate property. *Heirn* v. *M'Caughan*, 32 Miss. 17 ; *Faler* v. *Jordan*, 44 Miss. 283 ; *Davis* v. *Richardson*, 45 Miss. 499 ; *Cooper* v. *Frierson*, 48 Miss. 300 ; *Stegall* v. *Coney*, 49 Miss. 761 ; *Bloom* v. *Helm*, 53 Miss. 21 ; Collyer Part., § 6. Partners are bound by the contracts of one in the name of the firm. They are bound notwithstanding any private arrangements between themselves, unless the creditor has notice. A seller is not affected by misapplication of goods, unless he colludes, and admissions or acknowledgments by one partner bind them all. Collyer Part., §§ 384, 386, 422, 423 ; *Lea* v. *Guice*, 13 S. & M. 656. The partnership existing between Pierce and Snook, although for agricultural purposes, was a partnership of express powers, embracing the power in either to apply the proceeds to the debts of the firm. Nay, it was a partnership of implied power on the part of either partner to adjust and settle with the partnership effects for what was purchased for its benefit. The additional advances, however, were made at Pierce's request, and the firm was bound for them. Pierce knew of the application of the cotton to their payment, and for nearly three years acquiesced.

*G. A. Evans*, for the appellee.

As to a partner in a *planting* partnership, the ordinary rule that each partner is fully authorized to represent and bind the firm does not apply. But, on the contrary, strangers proposing to have negotiations with one of the members are put on inquiry whether they have authority. *Cooper* v. *Frierson*, 48 Miss. 300 ; *Prince* v. *Crawford*, 50 Miss. 344. The difference is broad between the ordinary commercial partnership and a farming partnership. *Blue* v. *Leathers*, 15 Ill. 31 ; *Lintner* v.

*Millikin*, 47 Ill. 178; *Rice* v. *Austin*, 17 Mass. 197; *Denny* v. *Cabot*, 6 Met. 82; *Dillard* v. *Scruggs*, 36 Ala. 670; *Holloway* v. *Brinkley*, 42 Ga. 226. The appellants knew, from the trust deed, the limit which the appellee fixed, and they exceeded that limit without demanding Snook's authority. This instrument was itself an appropriation of the crop, and Morgan & Son could not vary this contract without the consent of Pierce. 1 Jones on Mortgages, § 122; 1 Hilliard on Mortgages, 17. The tender discharged the trust deed. *Harmon* v. *Magee*, 57 Miss. 410. Subsequent sale thereunder was void, and as that is the only question in this case, and upon any view there is great conflict in the evidence, the decree must be affirmed. The decree of a chancellor, like the verdict of a jury, will not be disturbed unless the great weight of evidence is against it. *Davis* v. *Richardson*, 45 Miss. 499; *Apple* v. *Ganong*, 47 Miss. 189; *Partee* v. *Bedford*, 51 Miss. 84.

CAMPBELL, J., delivered the opinion of the court.

They who deal with one of several jointly engaged in a planting venture, such as Pierce and Snook were engaged in, must ascertain whether or not the person dealt with has authority to make the contract claimed to have been made, and without such authority from the others they cannot be affected by such contract. *Davis* v. *Richardson*, 45 Miss. 499; *Cooper* v. *Frierson*, 48 Miss. 300; *Prince* v. *Crawford*, 50 Miss. 344. In this case there is no evidence of authorization by Pierce to Snook to direct an application of the proceeds of the cotton, so as to vary the rights of the parties as fixed by the deed of trust. It is not claimed that Pierce authorized or assented to the diversion of the proceeds of the cotton from the payment of the debt secured by the deed of trust, but the claim is that Snook had authority to contract the additional indebtedness which most of the money arising from the sale of the cotton went to pay, and had the right to pay the debt thus incurred with the proceeds of the cotton; and, if the secured debt was left unpaid because of the insufficiency of the proceeds of the cotton to pay all the indebtedness, the rightful application of enough of it to pay the unsecured debt left the other in full force, with the incident of the deed of trust securing it.

The deed of trust and notes executed by Pierce and Snook, in January, 1876, apprised Morgan & Son of the willingness of Pierce to incumber his land, and the crop to be grown on it, and the mules mentioned, to secure the notes described in it; and before they permitted an increase of the indebtedness beyond the amount provided for by the deed of trust, in the expectation of its payment out of the crop or other property conveyed by it, they should have assured themselves of Snook's authority from Pierce to make such arrangement. He did not have such authority by virtue of his relation to Pierce in their planting operations, and he is not shown to have had such authority from Pierce. The cotton could not be diverted from the payment of the debt secured by the deed of trust, by the direction of Snook without the assent of Pierce, and that is not shown to have been given. The increased indebtedness to Morgan & Son beyond the amount provided for in the deed of trust, conceding it to have been legally chargeable to Pierce and Snook, was an unsecured debt; and it was not payable with cotton, which by the deed of trust was appropriated to the debts it secured, without the consent of Pierce.

As soon as the proceeds of the cotton came into the hands of Morgan & Son, the debt secured by the deed of trust was thereby discharged *pro tanto*. *Ogden* v. *Harrison*, 56 Miss. 743. Such would have been the legal result if Pierce himself had induced Morgan & Son to permit an increase of the indebtedness, and had afterwards delivered them the cotton conveyed by the deed of trust, without an agreement that it might be diverted from the payment of the debt it secured; and express or implied authority from Pierce to Snook to increase the indebtedness, did not change the legal effect of a delivery of the cotton, without the consent of Pierce to such change. It is true that Morgan & Son had the express direction of Snook to divert the proceeds of the cotton from the secured debt; but, as we have stated, the consent of Pierce to this diversion was necessary to vary his rights as fixed by the deed of trust, to which Morgan & Son were parties as beneficiaries. That Snook had authority to incur the additional indebtedness, if admitted, did not include the right to divert the cotton from the course prescribed for it by the deed of trust. Pierce had the right to

stand on the deed of trust as fixing the rights of the parties to it, unless he had authorized a departure from it. He may have been willing that the indebtedness of himself and Snook should be increased on the credit of the parties, and not willing that the deed of trust should be a security for it, or that what it conveyed should be appropriated to its payment. We find no error in the decree, and it is therefore

*Affirmed.*