SAMUEL H. LOWENBERG ET AL. v. LEWIS-HERMAN COMPANY.

[48 South. 517.]

1. AGRICULTURAL LIENS. *Civil Code of Louisiana, art.* 3217. *Mortgage creditor.*

Where cotton raised in Louisiana, and under the laws of that state, Civil Code, art. 3217, subject to a statutory lien to secure a debt due for plantation supplies, superior to all mortgages not given to secure a like debt, was by the owner delivered in this state in payment of the debt so secured, a creditor whose debt, not of the same character, was secured by mortgage thereon has no right to complain of the transaction.

2. PARTNERSHIP. *Partner as agent.*

Where a member of a partnership which conducted a plantation was placed in charge as manager, his contract for supplies to be used in making a crop bound the partnership, especially since his purchases for the preceding year were ratified.

FROM the chancery court of Adams county.

HON. J. S. HICKS, Chancellor.

The Lewis-Herman Co., a corporation, appellant, was complainant in the court below; Lowenberg and another, appellees, were defendants there.   From a decree in complainant's favor the defendants appealed to the supreme court.

The facts are fully stated in the opinion of the court.

*Ratcliff & Truly,* for appellants.

The mortgage held by complainants on the crops to be grown on a plantation in Louisiana for an antecedent debt was absolutely null and void.   The laws of that state do not recognize a mortgage on a crop to be grown for anything other than advances to be made to produce and market the crop and the mortgage in this case specifically says on its face that it is for the purpose of additional security for an antecedent debt, excluding the idea that it was intended to cover any advance to be made in the future or the making or the marketing of the crop of 1904.   But if we concede the validity of the mortgage as between the parties to it, the defendants claim that they had what is known in the jurisprudence of Louisiana as a privilege on said crop, which is a lien superior to any other for advances made to make and market the crop.   "If a privilege exists it is in itself higher than a mortgage and must of necessity be paid before and in preference to the mortgage and if the mortgagee admits the existence of the privilege it subordinates his mortgage."   31 La. Ann. 518.   All the pleadings in this case and all the rights contended for by complainants are based upon their supposed rights under this mortgage.   It is conceded, at least not denied, that defendants advanced the necessary supplies to make and market the crop which was shipped to them and which is the subject-matter of this suit, therefore they had a superior right to this cotton to the complainants or any one else.   But complainants say while that is true, while they admit we have a superior right to their mortgage by reason of our privilege,

that Farr, one of the partners, never consented that the advances should be made or that the cotton should be shipped to defendants. We answer this argument by saying that Farr's consent was wholly unnecessary. Clower was in full charge, known to be so by Farr, was put there by him to manage and control and arrange the supplies of the place. The complainant knew it and paid checks signed by Clower for the account of the "Hedgeland" plantation, and Clower bought all the supplies, managed the whole plantation and controlled and shipped all the cotton, not only for the year 1904 but for previous years.

The lien given by the laws of Louisiana and called there a privilege need not be recorded, but it corresponds very much to our landlord's lien in this state for rent and supplies. 32 La. Ann. (2nd vol.), 2139.

It is incomprehensible to us that a factor in Mississippi who advances a planter in the state of Louisiana for the purpose of making a crop and who is by the laws of that state given a superior lien to all other liens on the crops grown that year and who would have the right in Louisiana to take possession of that crop against all comers and when the maker or grower of that crop should deliver it to the Mississippi factor, that any ordinary unsecured creditors could come in and deprive him of the possession of it.

*A. M. Pepper,* for appellee.

The decision of this court is clear and uniform that statutory liens, like other statutory rights, extend no further than the state line and give no action or lien in reference to crops so covered after it has crossed the state line. *Chism v. Thompson,* 73 Miss. 415; *Hernandez v. Aaron,* 73 Miss. 436; *Millsaps v. Tate,* 75 Miss. 153.

While original bill charges cotton was grown and shipped to appellant by Clower & Farr, this was denied in the answers to original and amended bills and the transaction stated to have been with Clower alone without Farr being known and was so

conceded in appellee's answer to cross-bill and established by the evidence.   Authority of planting partners is much more limited than that of mercantile concerns and requires those dealing with the partner to ascertain his authority or act at their peril; and prevents the diversion of crop by one partner from a secured to an unsecured debt, without such partner's consent.   *Prince v. Crawford,* 50 Miss. 344; *Morgan v. Pierce,* 59 Miss. 210.

Even as to mercantile partnership such dealings have been held invalid.

"The authority of a partner is limited to those things done in the regular course of the business of the firm; outside of this he has no authority."   Parsons on Part. 163.   "If he sells the whole, or part of the assets, with intent to apply the proceeds to his own use, and thereby defraud his partner, if the purchaser from him has knowledge of such intent, or if the transaction was attended with such circumstances, as would have imparted knowledge, but for his gross negligence, then the purchaser's title is affected and vitiated."   Parsons on Part. 169.   "If the attempt be to mortgage or assign, and this be done in an unusual way, or under suspicious circumstances, such an act would be of no effect as against the party injured thereby."   Ib. and cases cited.

"A transfer by a partner of the joint effects, in fraud of a co-partner, will constitute the transferree, who received with such notice or without consideration a trustee for the benefit of the firm or its creditor."   *Stegall v. Coney,* 40 Miss. 769.

As we have pointed out, one of appellants admitted he knew of Farr's interest in Hedgeland and that no notice of his dealings with Clower were ever communicated to Farr or appellee otherwise than by the writings in evidence which show that nothing was mentioned, except what had been already done.

The only co-partnership property was Hedgeland, the whole of the Mississippi property being operated by Farr, and the general account kept against him.   The land owned by Clower in Mississippi was included in the Farr business, constituting,

apparently, the basis and security for such contributions as he had made towards payment of Hedgeland. In any event, the whole Mississippi business was operated as Farr's. (Tr. 131-2, 137-8, 140).

Argued orally by *E. H. Ratcliff*, for appellants, and by *E. M. Pepper*, for appellee.

FLETCHER, J., delivered the opinion of the court.

On the 16th day of January, 1904, Geo. W. Farr and J. M. Clower, owners of a certain plantation situated in Catahoula parish, La., known as "Hedgeland," were indebted to the Lewis-Herman Company, a corporation domiciled at Lexington, Miss., in the sum of $28,000. To secure the payment of this debt Farr and Clower on January 18, 1904, executed a deed of trust to the Lewis-Herman Company conveying certain property in Holmes county, Miss., as well as the crops to be grown on such property. This trust deed was so drawn as to cover all the future advances that might be made during the year. At the same time, or practically contemporaneous therewith, Farr and Clower executed a Louisiana mortgage on the Hedgeland plantation and all crops to be grown thereon, which was declared to be an additional security to the Holmes county trust deed. There was nothing in this mortgage to show that the money declared to be due was any part of it to be expended in furnishing supplies to the Hedgeland plantation for the year 1904. This mortgage was duly recorded in Catahoula parish. Clower was placed in charge of Hedgeland plantation as manager, and during the year 1904 bought supplies for the plantation from S. H. Lowenberg & Co., merchants doing business in Natchez, Miss., to the amount of some $3,700. At the close of the crop season of 1904 Clower delivered to Lowenberg & Co. sufficient cotton grown on Hedgeland to pay this debt. Whereupon the Lewis-Herman Company, claiming that this cotton was covered by their mortgage, filed this bill against Lowenberg & Co. to recover

the value of the cotton.  From a decree in favor of complainant, Lowenberg & Co. appeal.  The voluminous record in this case abounds in immaterial matters much discussed in the pleading, the proofs, and the briefs; but the above statement is thought to contain all that is really important in this controversy.

It would seem to be well settled that under the laws of Louisiana Lowenberg & Co. have a lien on the cotton raised on the Hedgeland plantation which is superior to any mortgage lien not given for plantation supplies.  This lien is called in the law of Louisiana a "privilege," and exists in favor of the supply merchant, though not recorded.  Civ. Code La. art. 3217; *Weill & Co. v. Kent et al.,* 52 La. Ann. 2139, 28 South. 295. There can be, therefore, no room for doubt that the claim of Lowenberg & Co. under their lien is superior to the claim of the Lewis-Herman Company under their mortgage.  It seems to be conceded in the brief of appellants that this view is correct, provided the crops had remained in Louisiana, and provided Clower had power to bind the partnership; it being shown that Farr had not acquiesced in the purchase of the supplies from appellant.  That Clower's contracts for supplies to be used in making a crop on the plantation of which he was in sole charge as manager are binding on the partnership seems to us too clear for disputation, especially in view of the fact that Clower's purchases for the previous year had been recognized and settled. We fully recognize the distinction between the so-called "planting partnership" and mercantile or commercial partnerships; but the transaction in question falls within the rule laid down by Judge STORY and cited with approval in *Prince v. Crawford,* 50 Miss. 344; that is to say, the authority of Clower, both in his capacity as partner and as agent for Farr, is "implied by the usages of the business or the ordinary exigencies and objects thereof."

But it is said that Lowenberg's lien stopped at the Mississippi river; that it had no extraterritorial force, and is of no

avail after the property was. removed to Mississippi. And to support this view, reliance is placed in *Chism v. Thomson,* 73 Miss. 415, 19 South. 210; *Hernandez v. Aaron,* 73 Miss. 436, 16 South. 910, and *Millsaps v. Tate,* 75 Miss. 153, 21 South. 663. If it be true that Lowenberg's lien stopped at the state line, it may be interesting to inquire why it is not equally true that appellee's lien stopped at the same place. Both may be considered as having liens; appellants a "privilege" under the laws of Louisiana, and appellee a "conventional mortgage" under the laws of that state—appellant's lien being superior. In this attitude of affairs Clower, the manager in charge and a member of the firm, delivers the cotton to the superior lien holder, who actually receives and applies the cotton to the secured debt. Appellee can derive no consolation from the cases cited. In *Hernandez v. Aaron* the mortgage creditor was defeated in favor of the supply merchant because the mortgage lien stopped at the state line, and the cotton factor in New Orleans actually received the cotton from the debtor; and precisely to the same effect is *Chism v. Thomson.* In *Millsaps v. Tate* the superior lien of the landlord was subordinated to the lien of a mortgage creditor when the cotton was shipped out of the state and actually delivered to such creditor. This case should be examined from the viewpoint of a person residing in Louisiana and shipping cotton into Mississippi, since Clower was located in Louisiana, temporarily at least, and dealing with crops grown in that state and subject to its laws. Lowenberg had the better lien, secured the cotton, which never became subject to appellee's mortgage lien, and must prevail. Of course, no importance can be given to the bill of sale executed by Farr and Clower long after the cotton was delivered to appellants.

The decree is *reversed, and the bill dismissed.*