There are two grounds upon which, in my opinion, the plaintiffs can recover upon these drafts, and the defendant's liability upon them is unquestionable.
1. The drafts were made and issued by the two partners, Joy and Hoyt, in the name of the partnership, and although the proceeds of the drafts did not inure to its benefit, it must be held liable.
2. The acts of Joy and Hoyt in making and issuing these drafts, must, under the circumstances, be held as binding upon the defendants, their principals, for whom they acted as agents; and as such, clearly and undeniably, they had authority to make, issue and put in circulation, such checks, drafts and bills of exchange.
It is to be remarked that there is no controversy that the plaintiffs are bona fide holders of the drafts, paying full value for them on an ordinary and accustomed discount. They had previously discounted large amounts of similar paper, made by the same parties and in the same form, and which had been regularly paid at maturity. These drafts came to them in the same way without any notice or circumstance leading or warranting or suggesting the suspicion that they were not of the same character as the paper previously discounted by them. Now I suppose that the principle is familiar and incontrovertibly settled, that in a copartnership firm each of the partners is the agent of the partnership, as to all matters within the scope of the partnership business, and can bind them effectually by making, indorsing and accepting bills and notes in such business. But such partner has no more authority than a mere stranger to make them a party to paper issued in his own business or for the accommodation of another person. If, however, he gives the partnership note or acceptance for his own debts or for the accommodation of a third person, it is void in the hands of the payee, who is necessarily cognizant of the consideration and of all the facts connected with its inception; but when such note or bill is negotiated to a bona fide holder, the firm is precluded from questioning the authority of the partner and is effectually bound. The cases by *Page 508 
which this doctrine is established and illustrated, are very numerous. (Livingston v. Hartie, 2 Caines, 246; Lansing v.Irvine, 2 Johns., 300; Laverty v. Burr, 1 Wend., 529;Williams v. Walbridge, 3 id., 415; Boyd v. Plumb,
7 id., 309; Gansevoort v. Williams, 14 id., 133; Joyce v.Williams, id., 141; Wilson v. Williams, id., 146; Steel
v. Catskill Bank, 18 id., 466; S.C., 15 id., 364; Farmers'Bank v. Butchers' and Drovers' Bank, 4 Kern., 627; S.C.,16 N Y, 135.)
But if Joy and Monteath and Hoyt, had not been partners, it is admitted by the answer that they were the agents of the copartnership, and as such had authority to draw, indorse and accept such checks, drafts and bills of exchange, for them, the said defendants, and such only as were necessary to the carrying on of the business, and for the use and benefit of the said Albany and Canal line of tow boats. It is, therefore, conceded that the agents had the authority of the defendants to issue drafts, notes and bills of exchange; but that such authority was limited to such drafts, notes and bills as were necessary to carry on the business of the defendants, and for their use and benefit. These drafts being negotiable or commercial paper and the plaintiffs being bona fide holders, the same question arises as was presented in the case of the North River Bank v.Aymar (3 Hill, 263). The very learned and exhaustive opinion of COWEN, J., in that case, leaves little to be said. That case was very like the present in the aspect we are now considering it. There the notes were made by an attorney, and the power under which he acted, authorized him to draw notes in the name of his principal "to his use." The notes then in controversy were not made or indorsed in the business of the principal, nor for his use or benefit, but for the accommodation of the payees therein who obtained them from the attorney, and who procured their discount by the plaintiffs in that case.
COWEN, J., thus correctly states the rule of law: That the power conferred by the letter of attorney, was limited to notes in the proper business of the testator, and that it would have been so independently of the words "to his use." That there is nothing in the nature or effect of such a power *Page 509 
which authorizes the attorney to use it for his own benefit, or for the benefit of any one except the principal. And that if the limitation be such that an appointee would be bound to notice the fact that the attorney overstepped it, then these plaintiffs were properly cut off by the court below from their claim upon the contested notes and indorsements. He further said, that in dealing with the agent or attorney they were not required to stop and ascertain whether the notes had been delivered out by him upon a consideration passing to his principal: that he, the principal, had put his agent in a condition which enabled him to impose upon strangers, by apparently pursuing his authority. The principal had given a discretion to speak for him both by words and actions. The neglect or falsehood of the agent, therefore, was legally imputable to the principal. The paper being issued without consideration, whether by the agent or by the principal, was indeed void as between the original parties; but there being in each case a power to issue paper valid in form, it could not be impeached in the hands of a bona fide holder.
When this present case was before the general term of the Supreme Court (17 Barb., 171), that court very properly and correctly held, that it was controlled by the decision in the case of the North River Bank v. Aymar; that it was a case directly in point and should be regarded as an authority, decisive of the question then presented. In the opinion delivered in this court, in the case of Mechanics' Bank v. New York andNew Haven Rail Road Company (3 Kern., 633), in alluding to this case of North River Bank v. Aymar, the learned judge said, the decision of the Supreme Court in that case, was reversed in the Court of Errors, but the case in that court is not reported. The learned judge added, the reversal, however, proceeded, as he learned, upon a doctrine directly opposite to that held by the Supreme Court. This statement, and the decision by this court in the Mechanics' Bank case, were held and generally regarded, as overthrowing the authority of the case of North River Bank v.Aymar, and when this present case again came before the Supreme Court at general term (24 *Page 510 
Barb., 371), the same learned justice who had delivered the opinion of the court on the former hearing, gave the opinion then reported, and observed that when the case was before that court on the former application for a new trial, he was unable to find anything to distinguish it from the case of the North RiverBank v. Aymar, and, upon re-examination, he still thought the two cases involved precisely the same question; that he thought the North River Bank case directly in point and decisive of the question. But he regarded the views expressed by this court in the Mechanics' Bank case, as establishing a contrary doctrine, and as establishing the fact that the North River Bank case had been overruled by the Court of Errors. But this court subsequently, in the case of the Farmers' and Mechanics' Bank
v. Butchers' and Drovers' Bank (4 Kern., 623; S.C.,16 N.Y., 125), had occasion to review the doctrine of the case of theNorth River Bank v. Aymar, and it received the emphatic approval of this court. DENIO, Ch. J., in his opinion, says: "I am clearly of the opinion that the case of the North River Bank
v. Aymar, was correctly adjudged in the Supreme Court. If the Court of Errors laid down a different rule, in reversing that judgment, they ran counter, as I think I have shown, to a strong course of adjudication in that court and in the Supreme Court and overturned a legal position which was then well established in this State, and has since been repeatedly acted upon." SELDEN, J., in his opinion, says: "It is true that the decision in the case of the North River Bank v. Aymar, was reversed in the Court of Errors, but the opinions pronounced in that court have never been published, and consequently the views then expressed upon the point in question are unknown. Under these circumstances, the principal reasons against the reconsideration of a question, which has been passed upon by the court of last resort, viz., that the public needs a fixed and definite rule, upon which it can rely in the transaction of business, loses most of its force. The opinion of the Supreme Court, which is published at large in the reports, is more likely to be taken as the rule, than that of the Court of Errors, to which attention is rarely *Page 511 
directed. The question, therefore, should, I think, be considered as still open for examination; and I have little hesitation in holding that it was properly decided by the Supreme Court." The doctrine of the case of the North River Bank v. Aymar, was re-affirmed in this court, in the case of Griswold v. Haven
(25 N.Y., 595), decided at the last December term, and must now be regarded as established on an impregnable basis. It is well sustained by authority, sound reasoning and well-established principles, and it should be firmly adhered to by the courts.* It receives my entire assent, and is entirely decisive of the plaintiff's right of recovery on the three drafts involved in the present action.
The judgment of the general term should be reversed, and a new trial ordered, with costs to abide the event.
* The doctrine of this case has lately received the sanction of the judicial committee of the Privy Council in two cases, viz., The Bank of Bengal v. Macleod, and The Same v.Fagan (7 Moore P.C. Cas., pp. 35, 61).