## LAMB *vs.* GROVER.

47b    317
40 Mis¹593

By a written contract between L. and A., L. agreed to furnish groceries to A. to sell at O., and to pay the rent of the store in which the groceries should be sold. A. agreed to sell such groceries and goods as should be furnished by L., for one half of the profits of the sale of such groceries and goods. *Held* that the agreement did not constitute the parties thereto *partners*.

That it amounted to nothing more than an arrangement between the parties, by which A. was to sell such goods as L. should furnish him, and as a compensation for A.'s services in selling them, he was to receive one half of the profits on the sales; A. standing in the relation of servant or agent of L. in the transactions which took place under the agreement.

Where the evidence given on a trial before a referee is not set forth in the case, the court will not go into an examination to see whether the findings of the referee are sustained by the testimony, but will assume that the findings are true, and in accordance with the evidence.

APPEAL from a judgment entered upon the report of a referee. The referee found that on the 1st of November, 1858, the following written contract was made and entered into between one C. C. Adams and the plaintiff, under their hands and seals :

"This agreement, made the first day of November, one thousand eight hundred and fifty-eight, by and between John H. Lamb, of the town of Nunda and county of Livingston, of the first part, and C. C. Adams, of the town of Portage in said county, of the second part, witnesseth : The party of the first part covenants and agrees, to and with the party of the second part, to furnish groceries for the party of the second part to sell in the village of Oakland, in the town of Portage ; also agrees to pay the rent of the store in which the goods are sold. The party of the second part agrees to sell such groceries and goods as shall be furnished by the first party, for one half of the profits of the sale of such groceries and goods. In witness," &c.

That in pursuance of such agreement, and about the time of its execution, the plaintiff advanced to Adams the sum of $300, with which to purchase goods, for sale at Oakland aforesaid. That Adams did purchase, in the name of the

plaintiff, $300 worth, or thereabout, of goods, and commenced the sale of them, at said village of Oakland. That he continued in said business, at Oakland, under the said agreement, from the date thereof until the levy on the goods, set forth in the complaint, was made, by the defendant; which said levy was made on the 12th day of June, 1863. That during the period from the date of the contract and the time of the levy, the store of Adams was replenished with goods, from time to time; some of which were furnished by the plaintiff, but most of which were purchased by Adams in the name of the plaintiff, and paid for out of the proceeds of sales of goods in said store. That during that period Adams applied for and received, in his own name, from the United States authorities a license, to do the particular kind of business in which he was engaged, the plaintiff directing him so to do, and paying the license fee. That during the said period, by the directions of the plaintiff, he paying the required sum therefor, Adams applied, in his own name, for, and received from the commissioners of excise, a license to sell, at said store strong, or spirituous liquors. That Adams, during said period, sold, at said place, under said agreement, groceries, flour, feed, crockery and other things usually sold at a country grocery; furnished feed and stabling for horses employed on the canal, &c. That all of such business, so done by Adams, was done under and by virtue of the agreement above mentioned, and as the agent of the plaintiff. That at the end of each year the profits of the said business were ascertained by the parties, and were equally divided between them. That on the 12th day of June, 1863, the defendant, a deputy sheriff, having an execution against Adams, issued upon a judgment in the Supreme Court, in favor of Wells & Christie, levied upon goods in the store occupied by him, of the value of $250. The plaintiff therefore replevied the goods.

The referee found as conclusions of law from the above facts: 1st. That there was no partnership between the plaintiff and

Adams. 2d. That the share of profits of said business, received by Adams, was in payment of, and a compensation for, the services rendered by him in said business. 3d. That Adams had no title to, or ownership in, the goods, which could be reached by an execution against him. 4th. That the title and ownership in the said goods were in the plaintiff; and that he was entitled to the immediate possession thereof. 5th. That said goods were unlawfully and wrongfully taken from the plaintiff by the defendant. 6th. That by reason of the premises, the plaintiff was entitled to judgment against the defendant, awarding him the possession of the goods, and six cents damages for their detention.

The defendant appealed from the judgment.

*H. Chalker*, for the appellant.

*H. M. Dake*, for the respondent.

*By the Court*, WELLES, J. The agreement between the plaintiff and Adams, of November 1, 1858, under which the latter received and sold goods, as stated in the case, did not constitute them partners. It amounted to nothing more than an arrangement between them by which Adams was to sell such goods as the plaintiff should furnish him, and as a compensation for the services of the former in selling them, he was to receive one half of the profits on the sales. Adams stood in the relation of servant or agent of the plaintiff in the transactions which took place under the agreement. The agreement was wanting in an essential requisite to constitute a partnership—that of a community of losses as well as profits on the sales.

As to the facts developed by the parol evidence, we must adopt the findings of the referee; as the evidence is not given in the case; and we can not therefore go into an examination to see whether such findings are sustained by the testimony.

In such a case we are to assume that they are true, and in accordance with the evidence.

Assuming that the referee has found all the material facts truly, no reasonable doubt can be entertained but that his conclusions of law are correct.

It seems to me that it is a plain case for affirming the judgment.

Judgment affirmed.

[Monroe General Term, December 3, 1866. *Welles, E. Darwin Smith* and *Johnson,* Justices.]