THOMAS J. HUNT et al., Appellants, v. RICHARD CHAPIN, impleaded with JAMES J. COWEN, Respondents.

(GENERAL TERM, THIRD DEPARTMENT, MARCH, 1872.)

The rule which authorizes one member of a copartnership to bind the firm by commercial paper, is only applicable to business of a trading or commercial nature, or to the ordinary business of buying or selling for a profit. It has no application to partnerships formed for agricultural purposes or others of a similar character.

A note given by an agent for money, which he represents to the payee is to be used in the business of the principal, but which is in fact applied by him to his own use, does not bind the principal unless it appears, either that the agent has express authority to execute the note, or that such authority may be implied from the general scope of the agents' employment, or from some custom of the business in which he is engaged.

THE action was brought upon a promissory note, which was as follows:

" $2,562.50.            VICKSBURG, *July* 31st, 1866.

" Four months after date we promise to pay to Hunt & Macaulay, or order, twenty-five hundred and sixty-two and $\frac{50}{100}$ dollars, for value received, with interest at ten per cent per annum from date till paid.

(Signed)            " COWEN & CHAPIN, *Agents.*"

The defendant Cowen did not appear and answer. The case was tried before Justice Bockes, without a jury, in Saratoga county, in March, 1870. The justice found the facts as follows:

1st. Prior to 1865, there had existed at Vicksburg, Miss., a mercantile firm composed of the defendants, James J. Cowen and James Chapin, the firm name and style of which was Cowen & Chapin, and which firm had become insolvent and had ceased business.

2d. In that year, 1865, said Cowen and Chapin, being desirous again to open the mercantile business at Vicksburg, it was agreed between them and the defendant, Richard Chapin, who resided at Whitehall, New York, that the latter should furnish goods and capital for such business at Vicks-

burg, and that said business should be managed and carried on by said James J. Cowen and James Chapin, as agents of said Richard, under the name and style of "Cowen & Chapin, agents," the said James J. Cowen and James Chapin to have each one-third of the profits of such business as compensation for their services in managing and conducting the same; and the parties proceeded with such business under this management until the death of said James Chapin, which occurred on or about the 16th December of the same year 1865.

3d. Immediately after the decease of said James Chapin, the defendant, Richard Chapin, repaired to Vicksburg, and it was then agreed, between said Richard and said James J. Cowen, that the latter should continue to manage and conduct the business as Cowen & Chapin had theretofore done, and under the same name or style of "Cowen & Chapin, agents," and that his compensation for his services in managing *and conducting the same as agent of said Richard, should be one-half of the profits of such business, and such business was thereafter continued pursuant to this agreement.*

4th. About the same time it was further arranged and agreed, between said Richard, said J. Cowen, and the owner of a plantation in the vicinity of Vicksburg, that said Richard should furnish the capital to stock and work such plantation for a year, with a view of raising cotton for market, the said Cowen to attend to and manage the same, and all matters pertaining thereto as agent, using the said name or style of "Cowen & Chapin, agents," in the conduct and management thereof, and to have one-third of the profits, if any resulting therefrom, as his compensation for such attention and management; the said Richard and said owner to have the other two-thirds, one-third each, of such profits; and said plantation was stocked and worked under such management, and the said Richard returned to New York in April, 1866, and was not in Vicksburg afterward.

5th. In July, 1866, the plaintiff loaned or advanced to said James J. Cowen the sum of $2,500, and the said Cowen made and gave them the note in suit in this action, dated

July 31st, 1866, and signed the same " Cowen & Chapin, agents." Such loan or advance was made ostensibly for the purpose of carrying on and working the plantation. The funds, however, were not, nor were any of them, used for that purpose, but the same were used and employed by said James J. Cowen in the payment or settlement and compromise of debts contracted by the old firm of " Cowen & Chapin," with which said Richard had no connection, and for which he was in no way responsible.

6th. The said James J. Cowen had no express authority to borrow money to be used in the business aforesaid, or to bind said Richard by or on commercial paper.

7th. Said Cowen paid a portion of the note in suit, but there still remains due to the plaintiffs therein the sum of $1,134.59, at this date.

The justice also held, as matter of law, on the facts as stated :

That said James J. Cowen had no right or authority to bind the defendant, Richard Chapin, in or by the note in suit ; that the same is not his note, nor is he liable to the plaintiffs thereon, and the complaint should be dismissed as to said defendant, Richard Chapin, with costs.

The plaintiffs duly excepted to the several findings of fact and conclusions of law, and requested the justice to make certain other findings, which requests were refused, and the plaintiffs excepted. A judgment was entered in favor of the defendant Chapin for costs, and the plaintiffs appealed.

*Tanner* for the appellants and plaintiff.

*Esek Cowen,* for the respondent and defendant.

Present—MILLER, P. J. ; POTTER and BALCOM, JJ.

By the Court—MILLER, P. J. The business of the defendants, as merchants, was conducted under the name of " Cowen & Chapin, agents ;" and Cowen's compensation for his ser-

Hunt *v.* Chapin.

vices in managing and conducting the same was to be one-half of the profits; no arrangement being made as to the losses.

Admitting that, ordinarily, a participation in the profits will establish the existence of a partnership between the parties in favor of third persons, in the absence of all other opposing circumstances, yet, as the proof shows that the profits were a measure of compensation, it may be questionable whether the circumstances under which the participation in the profits existed did not qualify the legal presumption, and establish that the profits were to be taken by Cowen in the character of an agent, as a mere compensation for labor and services, and not as a partner. (Collyer on Part., § 44; Story on Part., §§ 32, 36, 38; *Buckle* v. *Eckhert*, 1 Den., 337; affirmed in Court of Appeals, 3 N. Y., 132; *Lamb* v. *Grover*, 47 Barb., 317; *Merwin* v. *Playford*, 3 Robertson, 702.)

But it is not important to decide this question, inasmuch as there is no evidence that the plaintiffs or their agents ever knew that the defendants were connected in the dry goods business; and the note in question was given, and the advance made, ostensibly for the purpose of carrying on and working the plantation.

As to the business of managing the plantation, there was a separate and distinct agreement, by which the defendant, Chapin, was to furnish all of the capital to stock and work the same; and it was to be conducted and managed by Cowen, independent of the other business and in connection with the owner, upon a different division of the profits. If there was any partnership at all it was not a commercial partnership, where one partner could bind the firm by the making of commercial paper. There is no proof that the plaintiffs or their agent had any knowledge or expectation that the money was to be used in any other business; and, so far as the proof goes, it establishes that the money was procured as an advance for the benefit of the plantation alone, although not used for any such purpose. As an inducement

in obtaining the loan, it appears that the plaintiffs expected to have the sale of the cotton raised, which was to be consigned to them in payment of the note. The note, therefore, was given entirely distinct from the dry goods business, and the loan in part for the benefit of the owner of the land, who was equally interested in the profits with the defendants who worked the plantation.

Under the circumstances presented, I think that the defendant, Cowen, had no authority whatever to borrow money and to make a note which would bind the defendant, Chapin. The rule which authorizes one member of a copartnership to bind the firm by commercial paper does not extend to all kinds of business, and is only applicable to business of a trading or commercial nature, or to the ordinary business of buying or selling for a profit. It has no application to professional partnerships, or to those formed for mining, farming or other purposes of a similar character.

It is thus stated by Judge STORY: " This doctrine (that one partner can make commercial paper) is not applicable to all kinds of partnerships, but is generally limited to partnerships in *trade* and *commerce*, for in such cases it is the usual course of mercantile transactions, and grows out of the general customs and laws of merchants, which is a part of the common law, and is recognized as such. But the same reason does not apply to other partnerships, unless it is the common custom or usage of such business to bind the firm by negotiable instruments, or it is necessary for the due transaction thereof." (Story on Partnerships, § 102 *a.*) And it has been held in England that the rule does not apply to partnerships formed for mining, and especially to those formed for farming purposes. (*Healey* v. *Bainbridge*, 3 Adol. & Ellis, N. S., 316; *Dickinson* v. *Valpy*, 10 Barn. & Cress., 128; *Grunslade* v. *Down*, 7 id., 635.)

The business of the defendants was the cultivation and raising of crops on the land which they worked as farmers or planters; and even if they can be regarded as copartners, according to the authorities cited, one of them could not bor-

row money upon the credit of the firm, and bind the firm by promissory notes or bills of exchange.

It is insisted that if the parties were not copartners, and the signature to the note is to be treated as that of Cowen only, the defendant is still liable upon the contract of the agent made in his business and for his benefit. Where the act of the agent is authorized by the terms of the power, such act is binding upon the principal as to all persons dealing in good faith with the agent. (*North River Bank* v. *Aymar*, 3 Hill, 262; *The Exchange Bank* v. *Monteath*, 26 N. Y., 505; *Prest. &c., of Westfield Bank* v. *Cowen*, 37 N. Y., 321.) And in such case the principal would be liable, even although the funds were misappropriated. In the case at bar, the agent was not expressly authorized to borrow money or to make notes; and in order to make the principal liable, it must be made to appear that the agent was acting within the general scope of the authority conferred upon him by the agency. I think it cannot be implied, from the character of the business itself, that Cowen had authority to borrow money, or to give notes in conducting and managing the plantation. Nor does the proof show, in any way, that the exercise of such a power was necessary for such a purpose. The case is also destitute of any evidence of the universal usage of the cotton States for merchants to make advances on the crops, so as to authorize the court to regard it as a course of business, of which they can take judicial notice.

The testimony establishes that Chapin had furnished every article and all the materials necessary to carry on the business, and that the hands were not to be paid until the end of the season, in December or January. No money was therefore required until that time, while the money was actually borrowed by Cowen and the note given in the month of July previous, and not a dollar of the funds used for the purposes of the business of the plantation, but appropriated by Cowen for his individual benefit. There is, therefore, nothing to show that the money was required, even if Cowen was authorized to borrow it.

Hunt *v.* Chapin.

As there was no express authority to borrow the money, and none to be implied from the nature of the business, or to be inferred from any custom to borrow money known to Chapin, it follows, necessarily, that Cowen acted without authority, and the note was not valid as against Chapin.

Authorities are not wanting to sustain this view of the subject. In *Davison* v. *Stanley* (2 Man. & Grang., 721) it was held that a bailiff of a large farming establishment, through whose hands all payments and receipts passed, had no implied authority to pledge the credit of his employer by drawing and indorsing bills of exchange, and that to fix the principal the evidence should distinctly show that he knew, or had the means of knowing, the acts done in his name. In the case under consideration there is no evidence whatever to show, either authority from, or acquiescence by, Richard Chapin.

In *Howtayne* v. *Browne* (17 Mees. & Wels., 595) the action was brought by the plaintiffs to recover money advanced to an agent appointed by the company of proprietors for the management of a mine, and it was held that there was no proof of express authority to borrow money for the purpose of carrying on the business, nor that it was necessary, and that no such authority could be assumed. When the bill upon its face shows that it was the act of an agent, the parties must see that the agent is acting within the scope of his authority. (*Beach* v. *Vandewater*, 1 Sand., 265.)

The judge was right upon the trial, and the judgment must be affirmed with costs.

Judgment affirmed.