DEARDORF'S *Administrator*, v. THACHER *et al., Appellants.*

1.   **Non-trading Partnerships**: POWER OF MEMBERS TO EXECUTE NOTES. Ordinarily, partners in a non-trading firm have no implied power to bind each other by commercial paper executed in the name of the firm.   To make such paper binding, it must be shown either that the making of it was consented to in advance or subsequently ratified by the other partners, or else that from the constitution and particular purposes of the firm the power is necessary or usually exercised.

This rule applied to a firm engaged in the insurance, real estate and collecting business.

*Hickman v. Kunkle,* 27 Mo. 401, overruled.

Deardorf v. Thacher.

PER HENRY, J.   One member of a co-partnership, not a trading or mercantile co-partnership, may bind the firm by a note executed in the name of the firm for articles or labor necessary in the business of the firm.   *Prima facie* such a note is not binding on the firm.   In order to enforce it against them the holder must show that the consideration was articles or labor necessary in the business of the firm or that it was executed with the consent of the other members.

2.   ———: LIABILITY OF FIRM FOR NOTES MADE BY A MEMBER.   A note given in the name of a firm but not for a debt or by authority of the firm, will never be enforced against the firm at the instance of a person receiving it under circumstances calculated to provoke inquiry as to the authority of the partner executing it to bind his co-partners.

3.   **Per Hough, C. J.**   The note sued on in this case is not binding upon the other members of the firm (a non-trading firm) because executed in direct violation of the articles of co-partnership.

*Appeal from   Jackson   Circuit Court.*—HON. S. H. WOODSON, Judge.

REVERSED.

*Karnes & Ess* for appellants, in addition to the authorities referred to in the opinion of the court, cited *Tompkins v. Woodyard,* 5 W. Va. 216; *New York Ins. Co. v. Bennett,* 5 Conn. 574; *Cocke v. Branch Bank,* 3 Ala. 178; *Heffron v. Hanaford,* 40 Wis. 305; *McCrary v. Slaughter,* 58 Ala. 230; *Wittram v. Van Wormer,* 44   . 525; *Breckinridge v. Shrieve,* 4 Dana (Ky.) 375; Lindley on Partnership, (Ewell's Ed.) p. *260, 267, 268.

*Wm. E. Sheffield* for respondent, cited *Hickman v. Kunkle,* 27 Mo. 401; *Doty v. Bates,* 11 John. 344; *Onondaga Co. Bank v. DePuy,* 17 Wend. 47; *Whitaker v. Brown,* 16 Wend. 505; *Bascom v. Young,* 7 Mo. 1; *Braches v. Anderson,* 14 Mo. 441; *Church v. Sparrow,* 5 Wend. 223.

SHERWOOD, J.—Action on a promissory note, executed by Webster, as member of the firm, in the firm name of Thacher, Webster & Ellison.   Thacher and Ellison denied

the execution of the note under oath. The firm was engaged in the insurance, real estate and collecting business in Kansas City. The cause was referred to a referee, who made a special finding of facts, as follows:

1st, All the lumber charged in the several bills making up the amount for which the note sued on was executed, was purchased directly by defendant, Webster, or indirectly by him through E. O. Gibbs and F. M. Cottrel, by his direction, except one small item charged in one of the bills as having been obtained by one McBride for defendant Thacher. 2nd, Part of said lumber was used in building the house of said Gibbs, and certain houses of said defendant Webster, in which the said defendants Thacher and Ellison had not in fact any interest. 3rd, Other of said lumber was used in constructing a school house in Wyandotte county, Kansas, for the erection of which said house said Cottrel was the contractor, in which neither of said defendants had any interest, either as a firm or as individuals, and the lumber therefor was all bought by said Cottrel. 4th, Other of said lumber was purchased for use in making repairs upon houses, for the renting and care of which the defendants, as a firm, were agents. 5th, Said defendant Webster so bought and procured all of said lumber on the credit of said firm of Thacher, Webster & Ellison, without the knowledge of the said Thacher and Ellison, and said Deardorf sold and delivered all said lumber on the credit of said firm without any knowledge on his part that the same was not being bought for and applied to the purposes of said firm. 6th, By the articles of co-partnership between said defendants Thacher, Webster & Ellison, as between members of said firm, said Webster had no authority to make and deliver to plaintiff the promissory note sued on in the name of said firm, but the said plaintiff, Deardorf, had not any knowledge of that fact. When he took said note he took the same in good faith pursuant to the credit extended.

## I.

Partners engaged " in trade," have an authority implied by law to bind each other by commercial paper executed in the firm name.   Partners in other business, such as farming, mining, etc., have *prima facie* no such authority.   But this presumption against lack of authority may be rebutted by showing that the organization and particular purposes of the firm are such as to render it in the  special instance necessary, or if not necessary, usual in similar cases.   Smith's Merc. Law, 82, and cases cited.   The ability of one partner to so charge the firm of which he is a member, as to render it liable in an action of assumpsit, is not now under discussion, the sole point here being whether a member of a non-mercantile firm, can, *prima facie*, even for the purposes of the firm, bind the firm by a note executed in its name.

In the case of *Hedley v. Bainbridge*, 3 Ad. & El. (N. S.) 315, (43 E. C. L. 752,) where a note was given in the name of a law firm, by one partner, Lord Denman, C. J., said : " No doubt a debt was  due from the firm ; but it does not follow that one partner had authority to  give a promissory note for that debt.   Partners in trade have authority, as regards third persons, to bind the firm by bills of exchange; for it is in the usual course of mercantile transactions so to do, and this authority is by the custom and law of merchants, which is part of the general law of the land.   But the same reason does not apply to other partnerships.   There is no custom or usage that attorneys should be parties to negotiable instruments; nor is it necessary for the purposes of their business."   The plaintiff in that case was non-suited.   This is the uniform rule of decision in England, as shown by numerous cases, the latest being that of *Garland v. Jacomb*, Law Rep., 8 Exch. 216 ; *s. c.*, 6 Moak 289, decided in 1873. There a bill of exchange was drawn by one of two attorneys in partnership, in the name of the firm, and indorsed for his individual purposes by the same  partner, in the firm name, to the plaintiff, the other partner having no knowledge of

the transaction, and was accepted by an accommodation acceptor, and it was held that such indorsement was invalid, and the acceptor not estopped to deny its validity, thus following the doctrine of *Dickinson v. Valpy*, 10 B. & C. 139, and *Hedley v. Bainbridge*, 3 Ad. & El., cited by Mr. Smith, *supra*.

This point of the ability of one partner of a non-trading firm to bind the firm by a note issued in the firm name, has been very carefully and elaborately discussed, and many cases considered by the supreme court of Wisconsin, in 1875, where the matter is summarized thus : "We gather from all the authorities that the distinction between a trading and a non-trading partnership, in respect to the power of a partner to bind his co-partner by negotiable instruments, is not limited to a mere presumption of such authority in one case, and the absence of such presumption in the other, as the learned counsel for the plaintiff argued ; but we think, and must so hold, that one partner in a non-trading partnership cannot bind his co-partner by a bill or note drawn, accepted or indorsed by him in the name of the firm, not even for a debt which the firm owes, unless he have express authority therefor, from his co-partner, or unless the giving of such instruments is necessary to the carrying on of the firm business, or is usual in similar partnerships, and that the burden is upon the holder of the note who sues upon it, to prove such authority, necessity or usage," *Smith v. Sloan*, 37 Wis. 285 ; *s. c.*, 19 Am. Rep. 757.

This view is abundantly sustained by the text writers, (Story on Part., § 102 a ; Story on Agency, § 124 ; 1 Collier on Part., § 124 ; Byles on Bills, 43 ; Chitty on Bills, 39 ;) and, also, by a number of American authorities. *Ulery v. Ginrich*, 57 Ill. 538 ; *Hunt v. Chapin*, 6 Lans. 139 ; *Cocke v. Bank*, 3 Ala. 175 ; *Prince v. Crawford*, 50 Miss. 344 ; *Waller v. Keyes*, 6 Vt. 257 ; *Graves v. Kellenberger*, 51 Ind. 66 ; *Benton v. Roberts*, 4 La. An. 216.

The case of *Hickman v. Kunkle*, 27 Mo. 401, cited as showing that *prima facie* the note of any firm makes the

partnership liable thereon, is not sustained by the authorities. The rule is just the other way as already seen. The case of *Doty v. Bates,* 11 Johns. 544, sustains *Hickman's case,* but cites some cases from New York, which do not support it, as they were all cases where the firms were mercantile firms, and of course, governed by the rules already stated in relation to such firms. The same may be said of the cases cited by counsel for plaintiff: 5, 16 and 17 Wendell. The loose remarks sometimes made by courts in this class of cases arise, doubtless, from failing to advert to the broad distinction between trading and non-trading partnerships.

The opinion is, therefore, entertained, that *prima facie* the firm of Thacher, Webster & Ellison is not liable on the note in suit, and that the burden of overcoming the *prima facie* case against him, is thrown upon the plaintiff. Has he successfully met the issue which the law thus tenders him ? This question, I am satisfied, must receive a negative answer. There is nothing in the report of the referee, or looking behind it, in the evidence in this case, to rebut the presumption which meets the plaintiff at the outset, that Webster had no authority to bind the firm. The finding of the referee is express, that by the articles of co-partnership, no authority existed to execute notes in the firm name, and that Thacher and Ellison had no knowledge of Webster's transactions in this regard. And the referee finds no consent or ratification on their part. Nor does he find that Webster's act of giving the note was from the constitution and particular purposes of the firm, either usual or necessary. According, then, to the authorities cited, there can be no recovery on the note even were it conceded that Webster could charge the firm with the debt created by obtaining the lumber.

## II.

But there is another view which may be taken of this case, which, regardless of other considerations heretofore

mentioned, would preclude plaintiff from any recovery on the note, or in another action. According to the evidence upon which the referee bases his report, Deardorf never charged the lumber, for which the firm note was given, to the firm of which the defendants were members. On the contrary, it was charged to Webster, individually, at his request, and the bills were made out, presented to and approved by Cottrel, whom Deardorf let have lumber at Webster's instance, and when those bills were approved by Cottrel, they were presented to Webster individually, for payment, at his request. In regard to the rule which renders a firm liable on a firm note, to a third person, at the instance of one of its members, it has been remarked by an eminent author that: "It is an essential portion of the rule that the person to whom the firm is to be bound should have dealt *bona fide.* If he who seeks to charge the firm was himself privy to a fraud—if he knew, or even if there were circumstances to induce a man of moderate discernment to believe, that the partner with whom he contracted had no authority to bind the rest, innocent members will not be allowed to suffer by his recklessness or stupidity." Smith's Merc. Law, 82. The fact that the accounts were opened against Webster alone at his request, would seem very strong to indicate and argue either that credit was not given to the firm of which he was a member, or else that there were circumstances sufficient to induce a man of "moderate discernment" to believe that Webster had no authority to bind the rest. The conduct and requests of Webster, in this respect were of so unusual a nature; so contrary to the ordinary course of business, as to excite suspicion, or at least provoke inquiry as to his authority to bind the firm, and render Deardorf's failure to make inquiry on this point, gross negligence, such as will preclude a recovery against the partnership on the note in suit; for, by the exercise of the minimum of diligence, he could have ascertained the truth of the matter, just as found by the referee, to-wit: that Webster had no authority to bind the

firm by the note which he gave. Judge Story says: "Where a note has been made or indorsed by a partner, in violation of his duty and authority, if the holder who receives it has been guilty of gross negligence in receiving it, it will not be binding in his hands on the partnership." Story on Part., § 130. Looking at this subject, therefore, in the light of the authorities, the correctness of the doctrine of *Hickman's case* might be conceded and still hold that plaintiff's decedent, having been, by the circumstances of this case, put upon inquiry, which, if pursued, would have resulted in ascertaining that Webster had no authority to bind the firm, plaintiff cannot recover against that firm.

Therefore judgment reversed and cause remanded. NORTON and RAY, JJ., concur; HOUGH, C. J., and HENRY, J., concur in the result.

## *Separate Concurring Opinions.*

HENRY, J.—I concur in reversing the judgment, but do not concur in so much of the foregoing opinion as holds that one member of a co-partnership, not a trading or mercantile co-partnership, cannot bind the firm by a note executed in the name of the firm, for articles or labor necessary in the business of the firm. I agree that such a note is not *prima facie* binding on the co-partnership, and that, in order to recover upon it as a firm note, the holder must show that the consideration was articles or labor necessary in the business of the co-partnership, or that it was executed with the consent of the other members.

HOUGH, C. J.—The defendants composed a non-trading firm. The articles of co-partnership contained the following provision: "Neither party shall give his individual note nor the note of the firm, for any purpose whatever for the use and benefit of the firm, without the consent of the other members of the firm." The articles for which the note in question was given were not furnished for the use of the firm, nor were they such as were necessary for the bus-

iness of the firm, and no consent of the members of the firm to the giving of the note was shown. As I understand the record in this case, no question arises as to the burden of proof, or as to the *quantum* of proof necessary to make a *prima facie* case for the plaintiff. I concur in reversing the judgment.