Chetwood v. Berrian.

---

## George R. Chetwood

v.

## Thomas B. C. Berrian et al.

1. In 1872 complainant gave to an agent written authority "to assign, satisfy or discharge all mortgages made to him." The agent, thereunder, assigned to the defendant a mortgage of $10,000, declaring that the assignment was for the benefit of complainant. The agent applied the $10,000 to his own use.— *Held*, that complainant was bound by the assignment and the agent's concomitant declarations; the defendant testifying that he had no knowledge of the agent's fraud.

2. The assignment was made in December, 1879. The mortgage was afterwards foreclosed, the premises bought by the agent, and conveyed to the defendant in July, 1881. The complainant, who was then in Paris, was notified thereof in October, 1881, and returned to this state in April, 1882. He lived continuously thereafter, until April, 1883, with his agent, who informed him fully as to this transaction. He filed his bill in June, 1883.—*Held*, that his delay constituted a ratification and an estoppel as against defendant.

On· final hearing on bill and answer, and proofs taken in open court.

*Mr. Robert E. Chetwood,* for complainant.

*Mr. John R. Emery,* for defendant Berrian..

VAN FLEET, V. C.

The complainant seeks to obtain a ·decree against the defendant Thomas B. C. Berrian, declaring that he. holds certain lands in trust for complainant, and directing him to· convey them to complainant·. The complainant puts his right· to· this relief on the ground that Berrian, as against him, acquired· title to the lands in question by fraud. The complainant's· case; briefly stated, is this : that his agent, to· secure his own debt to Berrian, assigned a mortgage made to the complainant, and standing in complainant's name, to· Berrian, afterwards foreclosed the mortgage, procured the mortgaged premises to be sold, purchased them himself, and then conveyed them to Berrian. The strength of the complainant's case, as thus stated, it will be perceived, ·consists in the fact that Berrian accepted, as a pledge· for the per-.sonal debt of the agent, a security which on its face showed·that it was the property of his principal.

The complainant on the 25th of September, 1866, by writing under his hand and seal, constituted John· Chetwood his attorney in fact, with power to bargain, sell and convey his lands situate in the cities of. Newark and Elizabeth ; also upon payment to satisfy, discharge and cancel of record all mortgages held by him upon property in· the states of New York, New Jersey or Michi-.gan, and also to assign such mortgages and the bonds secured thereby ; also to collect all dividends which might be declared .by any corporation in which he was a stockholder, to vote for him at· any election or meeting of stockholders of such corporations, and to take any action in such corporations which he might see fit. Soon after the execution of this power· of attorney, the complainant went to Paris, France, where he remained until 1870. In that year .he returned .to· New Jersey, taking up his

Chetwood v. Berrian.

residence at Elizabeth, where he had resided before going to-
Paris.  He remained there until June 8th, 1872, when he again
left for Paris.  He remained in Paris on this last occasion until
April, 1882.  The day before he left for Paris the last time—
June 7th, 1872—the complainant executed another power of
attorney to the same person, giving him enlarged powers.  By
this last instrument he gave his attorney power to sell, convey
or lease all his real estate in any one of the United States ; to
assign, satisfy or discharge all mortgages made to him on prop-
erty in any one of said states ; to sell and transfer all stocks in
any joint stock corporation or association standing in his name ;
and for those purposes, to execute all necessary deeds and instru-
ments, giving and granting unto his attorney full power and
authority to do and perform all and every act and thing what-
soever requisite and necessary to be done in and about the
premises, as fully to all intents and purposes as the principal
might or could do if personally present, with full power of sub-
stitution and revocation.  The appointee was the complainant's.
nephew, a lawyer by profession, and in successful practice in the
city of New York, and also a member of the New Jersey bar.
The complainant was a man of wealth.  He estimated his for-
tune, at the time when he executed the last power of attorney, at
$230,000, of· which more than four-fifths consisted of personal
estate.  The complainant is a physician by profession, and when·
he went to Europe in 1866 was over sixty-four years of age.
His object in going to Paris, in would seem, was not to pursue
his profession, nor to engage in any business, but to enjoy his
fortune, and live a life free from care and labor.  All his
securities were left with his attorney, who collected the income
of his whole estate, paid his taxes, and made such other dis-
bursements as were necessary, and from time to time made such·
remittances to the complainant as he required.  The control
exercised by his attorney over the complainant's estate was
general, complete and exclusive.  He was continued in power
after the complainant's return in 1870.  The power of attorney
executed in 1866 was not revoked, and the bond and mortgage
subsequently assigned to Berrian, were taken to secure a loan.

made by his attorney for the complainant in 1871, while he was still in this country.

The transaction which gave rise to this suit took place in December, 1879, in the city of New York. The defendant Berrian is a man of small fortune, consisting of about $20,000, and an invalid. He resided in Europe continuously from June, 1872, until September, 1879. He went there for medical treatment. Prior to December, 1879, the complainant's attorney had pledged the bond and mortgage subsequently assigned to Berrian, as security for a loan made to him by the Germania Insurance Company. When that loan fell due, the complainant's attorney applied to Berrian for a loan of $10,000 for the complainant, offering to assign the bond and mortgage under which the title in question was made, with others, as collateral security, and stating that he had written authority to act for the complainant in the matter. The attorney swears that Berrian made the loan upon his representation that it was for the complainant, and that he so understood the transaction at the time, as the money was required to release the complainant's securities from a previous pledge. His evidence on this point is uncontradicted. The money obtained from Berrian was used to pay the insurance company, and to release the bond and mortgage subsequently assigned to Berrian from the claim of the insurance company. But the money obtained from the insurance company was used by the complainant's attorney for his own purposes, in fraud of his principal. He has purloined and squandered nearly the whole of the complainant's personal estate.

The case made by the bill is not proved. The vital fact of the complainant's case, as stated in his bill, is that Berrian, to secure a debt due from the attorney, in his individual capacity, to him, accepted a mortgage which he knew belonged to the complainant. If that fact had been established, the case would have been free from the least doubt. Berrian would then have been shown to have been a conscious and willing participant in the attorney's fraud, and would not have been permitted, as against the complainant, to have kept any of the fruits of the fraud. But that is not the case. On the contrary, it is undis-

Chetwood *v.* Berrian.

puted that the complainant's attorney, availing himself of the position in which the complainant had placed him, and of the authority with which the complainant had apparently clothed him, has obtained Berrian's money under a representation that he was acting for the complainant, and that the complainant was the borrower. In this condition of affairs, the important question is, Who shall bear the consequences of the attorney's fraud— his principal, or an innocent third person who dealt with him in good faith? It is an elementary principle of the law of agency that a principal is bound by all the acts of his agent within the scope of the power which he has conferred upon his agent. And this includes not only the particular act which the principal has expressly authorized, but also whatever is usually done, in the ordinary course of business, in the performance of that act. Very broad powers were conferred in this case. It would be difficult to select more comprehensive terms, or to state them in a more unrestricted form. These are the words used by the complainant in granting power to his attorney :

"To assign, satisfy or discharge all mortgages made to him."

It will be observed that the words are not "to sell and assign," nor "upon payment to satisfy or discharge," but both powers stand entirely unlimited and unrestrained, in their broadest form, and must, therefore, receive a construction commensurate with the breadth of the terms used. A grant of a power "to assign," standing wholly unrestrained, and without any limitation whatever upon its exercise, is broad enough to authorize an assignment to secure a loan made for the benefit of the grantor of the power. When a principal confers power by terms so uncertain as to be susceptible of two different constructions, and the agent in good faith adopts the one least favorable to his principal, the principal cannot repudiate the acts of his agent as unauthorized because he meant the terms to be read in the other sense. *Ireland* v. *Livingston, L. R., 5 Eng. & Irish App. (H of L.) 395, 416.* A power "to sell and assign" will not authorize an agent to pledge the property of his principal, for in such case the terms

themselves exclude the idea of any other disposition than a sale out and out.

Under a power so general and comprehensive, and so entirely free from all restriction or limitation whatever, as that granted by the complainant in this case, the attorney may, I think, do anything with a mortgage which may be effected by an assignment. The only limitation on his power, under such a comprehensive grant, is that he must use the power for the benefit of his principal. In no case can an agent use the power conferred upon him for the benefit of any other person than his principal, except his authorization gives him express permission to do so. But while this is true, it is also true that if an agent, while doing an act which his principal has authorized him to do, represents that he is doing it for his principal, but it should turn out that his representation was false, and the result should show that he did the act for himself, his principal would nevertheless be bound. The contract in this case was made in the state of New York, and it was to be performed there; its validity and construction must, therefore, be determined by the law of that state. Now, it has long been the law of that state that whenever the act of an agent is authorized by the terms of the power constituting him an agent, that is, whenever, by comparing the act done by the agent with the words of the power, the act is in itself warranted by the terms used; the act is, as to all persons dealing with the agent in good faith, the act of the principal. Such persons are not bound to inquire into facts *aliunde.* The apparent authority is as to them the real authority. This rule was first declared in *North River Bank* v. *Aymar, 3 Hill 262.* That case, it is said, was afterwards reversed by the court of errors, and that the reversal proceeded on the ground that the legal rule above stated was erroneous. The opinion, however, of the court of errors has never been reported, and the history of the case here given will be found in the dissenting opinion of Judge Comstock, in *Farmers and Mechanics Bank* v. *Butchers and Drovers Bank, 16 N. Y. 154.* But the doctrine declared in *North River Bank* v. *Aymar* has since been repeatedly affirmed by the court of appeals of New York, and is now the established

Chetwood *v.* Berrian.

law of that state. *Farmers and Mechanics Bank* v. *Butchers and Drovers Bank, 16 N. Y. 125; Griswold* v. *Haven, 25 N. Y. 595; Exchange Bank* v. *Monteath, 26 N. Y. 505; Bank of New York* v. *Bank of Ohio, 29 N. Y. 619; Westfield Bank* v. *Cornen, 37 N. Y. 320.* In two of the cases above cited, it is said that where the party dealing with an agent has ascertained that the act of the agent corresponds in every particular, in regard to which such party has or is presumed to have any knowledge, with the terms of the power, he may take the representation of the agent as to any extrinsic fact which rests peculiarly within the knowledge of the agent, and which cannot be ascertained by a comparison of the power with the act done under it.

My conclusion is, that the act of the attorney in this case was within the power with which his principal had invested him, and that his principal is bound by his declaration as to his object in exercising the power.

But if a different result had been reached on this branch of the case, and it had been found that the attorney's act was unauthorized, still I think the complainant would not have been entitled to relief. The lands in question were conveyed to Berrian in July, 1881. The complainant was notified of the conveyance in October, 1881, and he says on receiving such notice he made up his mind to come to America; but, after reflection, he concluded to postpone his return until the following spring, as he usually suffered a great deal on a sea voyage, and they were always tempestuous in the winter season. So far, perhaps, there is nothing which would justify the court in saying that the complainant was bound, if he believed his attorney had exceeded his authority, to disown his act without delay, or otherwise be concluded by it. Inaction or silence by a principal will never have effect to ratify the unauthorized act of his agent, unless it is shown that the principal did nothing or said nothing after he was fully informed of what his agent had done. So far, all we know is that the complainant, on receiving notice that a conveyance had been made to Berrian, desired to return to America, but was deterred from doing so by fear of personal discomfort,

14

and that he remained in Paris until the following April, without, in the meantime, seeking any information of his attorney, respecting the conveyance to Berrian. The complainant, on his return to this state in April, 1882, went to the residence of his attorney at Elizabeth, and took up his abode there, and continued to reside with him until April, 1883. He admits that his attorney, in May, 1882, gave him full information in writing respecting his transactions with Berrian, and also told him that he had spent all his personal estate. The bill in this case was not filed until June 23d, 1883. Up to that time the complainant had, in no way, indicated that he thought the act of his attorney, in this particular transaction, was in excess of his power, or that he intended to repudiate it. On the contrary, his daily conduct, for nearly a year after he was in full possession of all the facts, constantly gave the very strongest assurances that he had condoned the faults and crimes of his nephew, and meant to stand by his acts. For nearly a year after he was fully acquainted with his nephew's frauds, he remained a member of his nephew's family, daily associating with him as a reputable citizen, and taking no step either to obtain justice for himself or to bring his nephew to justice. If his purpose in this course of conduct was, by gentle means and seeming to forgive, to procure re-imbursement for his losses to the extent of his nephew's property, and then, when he had got all he could get out of him, disown and repudiate his nephew's act, and attempt to compel those who had dealt with his nephew, as his representative, in good faith, to respond to him for his nephew's wrongs, his laches should, on the plainest principles of justice, be held to be fatal to his purpose.

The rule is settled that where the silence of a principal may cause loss to a third person, or give him an advantage, he must, without unreasonable delay after the fact comes to his knowledge that his agent has exceeded his authority, disown his agent's act and afford the other party an opportunity to protect himself, or he will make his agent's act his own. *1 Chit. on. Cont.* (*11th Am. ed.*) *291; Bendict* v. *Smith, 10 Paige 126; Vianna* v. *Barclay, 3 Cow. 281.* In *Cairnes* v. *Bleecker, 12 Johns. 300,* Judge Spencer said: "It is a salutary rule, in relation to

agencies, that when the principal is informed of what has been done [if his agent has exceeded his authority], he must dissent, and give notice in a reasonable time, or otherwise his assent to what has been done shall be presumed." In that case silence for less than four months was held to constitute a ratification.

The complainant's bill, as against Berrian, must be dismissed, with costs.