K. A. SHAW, Respondent, v. W. J. GUNBY, Appellant.

Kansas City Court of Appeals, May 3, 1915.

1. **BILLS AND NOTES: Partnership: Authority of One Partner to Bind the Other.** When one sues a nontrading partnership on a note, which is signed by both parties, that is, one partner having signed his own name, and his partner's name, as his agent, it devolves on such plaintiff to prove either express authority or subsequent ratification of the agent's right to

sign the partner's name to the note, and, if the plaintiff fails to prove such agency, he cannot recover.

2. ———: ———: ———. Partners in a nontrading firm have no implied power to bind another by commercial paper executed in the name of the firm. To make such paper binding, the party seeking to hold the other members must show either previous authorization or subsequent ratification.

3. ———: ———: Trading and Nontrading. The distinction between a trading and nontrading partnership is that in the former each partner, as the agent of his copartners, has implied authority to execute negotiable instruments on behalf of the firm in the usual course of its business and to bind his partners by such acts, while in the latter no such agency can be implied from the mere fact of a partnership, and since one partner has no implied power to bind his associates he must have express authority, or if he acts without it, a partner not participating will not be bound unless subsequently he evinces in some way his ratification of the unauthorized act and the burden is on the holder of the note who sues upon it to prove such authority or ratification.

Appeal from Linn Circuit Court.—*Hon. Fred Lamb,* Judge.

REVERSED.

*Scott J. Miller* and *Paul D. Kitt* for appellant.

(1)   The court erred in refusing to give demurrer asked by defendant. 30 Cyc. 511; Hukman v. Kunkle, 27 Mo. 326; Blake v. Bank, 219 Mo. 650. (2) A partner cannot execute a note in the name of the firm after its dissolution, even in renewal of a note of the firm, so as to bind any other partner or the firm. Synod v. Schoeneich, 143 Mo. 652; Moore v. Lackman, 52 Mo. 323; Springer v. Cabell, 10 Mo. 640; Friendman v. Punch, 93 Mo. App. 464; Broughton v. Sumner, 80 Mo. App. 386; Seufert v. Gille, 230 Mo. 480; Bank v. Drew, 126 La. 1028; Long v. Story, 10 Mo. 636. (3) The exception to the rule last above is, a firm is liable as well as the partners where one deals with a person professing to act for the firm and believes he so deals and

is justified in that belief, either by what the other members of the firm have done or have failed to do; that is, have failed to give notice of dissolution. Parsons on Partnership (4 Ed.), sec. 299; Seufert v. Gille, 230 Mo. 480. (4) But the above exception that after a partnership is dissolved, one partner dealing with a person having no notice of the dissolution may bind his late partner applies only to transaction in the usual course of the firm business. Parsons on Partnership (4 Ed.), sec. 323; Seufert v. Gille, 230 Mo. 481; Winship v. Bank, 5 Pet. 561; 30 Cyc. 675, note 49; Whitman v. Leonard, 3 Pick. 177.

*Edwin C. Orr* for respondent.

(1) The defendant having directed the drawing of the note in suit, and having sent it to plaintiff, after execution by McWilliams, his partner, showed a knowledge and consent and a ratification of the partner's action as to bind him as though he had, himself signed the note. 30 Cyc. 506, notes 78 and 79; 30 Cyc., page 507 and cases cited; Bank v. Faults, 115 Mo. App. 42; Deardorff v. Thatcher, 78 Mo. 128; Broughton v. Sumner, 80 Mo. App. 386. (2) It was within the powers, both expressed and implied, for either partner to issue negotiable paper for a preexisting debt for money which had been applied to the firm's benefit, with the knowledge and consent of the other partner. 30 Cyc. 503 and 504; Tyler v. Tyler, 78 Mo. App. 240; Hardware Co. v. Moyer, 110 Mo. App. 14. (3) Plaintiff was entitled to an actual notice of the retirement of defendant before defendant was relieved of any obligations of the firm towards those accustomed to dealing with the firm. 30 Cyc. 609 and 671; Curtis v. Sexton, 201 Mo. 217; Page v. Risley, 23 Mo. 185; Black v. Price, 24 Mo. App. 14; Costello v. Nixdorf, 9 Mo. App. 501. (4) The burden of showing notice of dissolution was upon the partner relying upon its advantage. 30 Cyc.

674; Bank v. Spielman, 35 Ill. App. 184; Stricker v. Conn., 90 Ind. 464; Reading Braid Co. v. Stewart, 45 N. Y. Supp. 69. (5) The distinction between trading and nontrading concerns is a close one. It having been held that a real estate, loan and abstract business was a commercial partnership. Adams v. Long, 114 Ill. App. 277.

JOHNSON, J.—Plaintiff brought this suit in the circuit court of Livingston county June 18, 1914, upon the following negotiable promissory note:

"$500.00 ·          Chillicothe, Mo., Jan. 26, 1911.

Three years after date I promise to pay to the order of K. A. Shaw five hundred and no/100 dollars. For value received, with seven per cent interest thereon from date which interest shall be due and payable annually; and if the interest thereon be not paid when due, the same shall bear interest at the rate of eight per cent per annum; negotiable and payable at the office of The Gunby Realty Co., Chillicothe, Mo., and if not paid when due, a ten per cent attorney's fee to be added for collecting.

THE GUNBY REALTY CO.,
CHARLES E. McWILLIAMS."

The petition alleges that at the time of the execution and delivery of the note defendant and Charles E. McWilliams "were copartners doing business under the firm name of 'The Gunby Realty Company' at the city of Chillicothe, Missouri." The answer, under oath, denies the partnership and the execution of the note by defendant. The cause was sent to Linn county on change of venue and a trial in the circuit court of that county resulted in a verdict and judgment for plaintiff. Defendant appealed.

Plaintiff formerly practiced law in Chillicothe, but since 1905, has lived in Washington. He owned real estate in Chillicothe and employed defendant who was

doing business in that city as an abstracter and loan and real estate broker, under the name of The Gunby Realty Company, to sell the property and lend the proceeds for him. Following this employment and after plaintiff had returned to Washington, defendant, in September, 1908, entered into partnership with McWilliams and the firm continued to do an abstract, loan and real estate brokerage business under the name of The Gunby Realty Company. They found a purchaser for plaintiff's real estate and after the sale was consummated invested the proceeds in loans which were accepted by plaintiff. McWilliams owned a newspaper known as the Meadville Messenger which he sold in February, 1909, on deferred payments to one Varney for $2000. He testified that defendant had a half interest in the newspaper but this is denied by defendant who insists that McWilliams was the sole owner. Varney executed and delivered to The Gunby Realty Company his promissory notes for the purchase price and a chattel mortgage on the newspaper to secure their payment. One of these notes was for $500, bore interest at eight per cent per annum from date and matured in five years. Under date of February 11, 1909, The Gunby Realty Company wrote plaintiff advising him to buy this note saying, in part, "there has come to our office a loan of $500 which we thought perhaps you might be able to handle . . . this is the first note out of a $2000 loan that we made on the Meadville Messenger Printing Plant. We sold the plant to a gentleman for $2000, and he is paying it off on the basis of $30 per month and this is the first note, draws eight per cent interest and is absolutely good. . . . Of course we are back of this for $1500 and you know that it makes it absolutely gilt edge because if he failed to pay yours would be the first note to fall due."

A week later defendant personally wrote plaintiff about the note as follows: "Under this mortgage the

way it is drawn and under our State laws, the first note takes precedence and if foreclosure should be necessary then the first note would have to be paid first . . . so then in a loan of this kind you are absolutely protected, because your $500 would have to be paid first before we could get a cent of our $1500. There is no real estate in connection with this loan but the plant is absolutely good for the money and as we wrote you originally we would have to protect your loan before we could get a cent ourselves."

The note was enclosed and plaintiff accepted and paid for it. On February 3, 1910, defendant wrote plaintiff: "Please send me the F. O. Varney note as he has sold the plant and some other parties now own it and we will send you the new note in place of this one with interest payable at the same time as the old one." On December 7, 1911, The Gunby Realty Company asked plaintiff to "kindly send us by return mail note you have for $500 secured by the Meadville Printing Plant" and on December 21, 1911, wrote plaintiff enclosing a check for $35, "covering interest on $500 loan sent us a short time ago; also a new note of like amount from the new owner of the Meadville Messenger Plant." On May 24, 1912, The Gunby Realty Company, in a letter dictated by McWilliams, enclosed the note in suit "in lieu of the one that you hold. We have somehow neglected sending this to you and just run across it among the loans today."

The partnership was dissolved March 1, 1912, defendant retiring from the business which, thereafter, was conducted by McWilliams under the name of The Gunby Realty Company. McWilliams, who was the principal witness for plaintiff, testified that in the settlement of their partnership affairs funds were left in his hands to pay the note of $500 held by plaintiff and that he agreed with defendant to pay that note. Instead of doing as he agreed he executed the note in suit which he dated back to January 26, 1911, and

induced plaintiff to accept it in payment of the note he was holding and which was secured by a chattel mortgage on the printing plant. The evidence, as a whole, shows conclusively that McWilliams executed this note in the name of The Gunby Realty Company as principal maker after defendant withdrew from the partnership and without his knowledge or consent.

The business conducted by defendant and McWilliams as partners was that of a nontrading partnership. An accurate and terse definition of the distinction between trading and nontrading partnerships is found in the following quotation from 1 Bates on Partnership, sec. 327: "Buying and selling has been said to be the test of a trading partnership. But that a partnership is formed to sell is no test at all; and it is difficult to conceive of a partnership in which purchases are not sometimes necessary; thus, farmers must constantly buy their seeds, miners their blasts, lawyers their stationery. It should rather be said that, if the partnership contemplates the periodical or continuous, or frequent purchasing, not as incidental to an occupation, but for the purpose of selling again the thing purchased, either in its original or manufactured state, it is a trading partnership, otherwise it is not." In section 329, real estate, insurance, collecting and loan brokers are classed as nontrading partnerships and we think abstracters clearly come within the same definition. [Deardorf v. Thacher, 78 Mo. 128.]

We are cited by counsel for plaintiff to Adams v. Long, 114 Ill. App. 277, as an authority holding that a partnership engaging in the real estate, loan and abstract business is a trading partnership but in that case the court found that "the firm as the evidence tends to show, bought and sold real estate on its own account," and properly concluded that "this is sufficient prima facie to make a trading partnership." We are referred to no authority which holds that a mere

brokerage business will characterize a firm engaging in it as a trading partnership.

An important distinction between a trading and a non-trading partnership is that in the former each partner, as the agent of his copartners, has implied authority to execute negotiable instruments on behalf of the firm in the usual course of its business and to bind his partners by such acts, while in the latter no such agency can be implied from the mere fact of a partnership, and since one partner has no implied power to bind his associates he must have express authority, or if he acts without it, a partner not participating will not be bound unless subsequently he evinces in some way his ratification of the unauthorized act and the burden is upon the holder of the note who sues upon it to prove such authority or ratification. [Deardorf v. Thacher, supra; Bonding Co. v. Fults, 157 Mo. App. 553; Carter v. Steele, 83 Mo. App. l. c. 214; Kahn v. Overstolz, 82 Mo. App. l. c. 238; Stavnow v. Kenefick, 79 Mo. App. l. c. 44; Bank v. Fults, 115 Mo. App. 42.] As is said in the last case cited: "Partners in a nontrading firm have no implied power to bind one another by commercial paper executed in the name of the firm. To make such paper binding, the party seeking to hold other members must show either previous authorization or subsequent ratification."

Whether McWilliams executed the note in suit before the dissolution of the firm, as contended by plaintiff, or after, as we think the proof conclusively shows, is immaterial in view of the complete failure of plaintiff to show any facts or circumstances from which a reasonable inference would arise that defendant either gave his express sanction to the execution of the note or subsequently ratified its execution. The fact that defendant in the partnership settlement made provision for the payment of the note for which the present note was exchanged could not be distorted into an authorization of McWilliams to bind him by signing the

partnership name to another note.  Nor could the fact, if it be a fact, that defendant had become liable to plaintiff in some manner to pay the old note, be regarded as having conferred such authority upon McWilliams.

The sole issue in this action is whether or not McWilliams was the agent of defendant to bind him by signing the name of the nontrading partnership to the note in suit.  To establish such agency it devolved upon plaintiff to prove either express authority or subsequent ratification and having failed to introduce evidence tending to show the existence of such elemental fact, plaintiff cannot be allowed to recover upon a note which defendant did not sign, nor authorize anyone else to sign for him or on his behalf. The learned trial judge erred in not directing a verdict for defendant.

The judgment is reversed.

All concur.